**COMMISSIONER OF INTERNAL REVENUE**

v.

**EVANS.**

No. 4731.

United States Court of Appeals
Tenth Circuit.
March 13, 1954.

S. Dee Hanson, Washington, D. C. (H. Brian Holland, Ellis N. Slack, Lee A. Jackson and James Q. Riordan, Washington, D. C., were with him on the brief), for petitioner.

Sydney E. Shuteran, Denver, Colo., for respondent.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The question presented here is whether monthly support payments received by respondent-taxpayer in the taxable year 1948, pursuant to a property settlement agreement executed by taxpayer and her then husband incident to an interlocutory decree of divorce in the State of Colorado, constitute taxable income to

her under Section 22(k) of the Internal Revenue Code, 26 U.S.C.A. § 22.[1] The facts were adopted by the Tax Court as stipulated, and from a decision holding that such payments were not taxable to her, the Commissioner has appealed.

Taxpayer and John Evans, Jr., were married in Denver, Colorado in 1938, and lived continuously together as husband and wife until 1947, when she filed an action for divorce in the District Court of the City and County of Denver. On December 5, 1947, the parties entered into a property settlement agreement providing in part that pending the hearing on the application for divorce, the husband would pay to the wife the sum of $625 per month "to be used by her as alimony pendente lite", and $125 per month for each of their three minor children; that these payments would terminate whenever a final decree of divorce in the action then pending should be entered; and that if a final decree of divorce was for any reason not entered within one year from date, or either party died before the said final decree, the agreement should cease and terminate and the rights of the parties should remain as they were prior to the execution of the agreement. The agreement then went on to provide for the terms and conditions of settlement upon the entry of a final decree of divorce.

On December 10, 1947, the Colorado trial court entered its "Interlocutory Decree in Divorce", wherein it found that a divorce should be granted the wife, and ordered that "an interlocutory decree of divorce is hereby entered dissolving the marriage of plaintiff and defendant six months after the date of this interlocutory decree. It is expressly decreed by the court that during such six months period after the signing of this Interlocutory Decree the parties hereto shall not be divorced; shall still be husband and wife, and neither party shall be competent to contract another marriage anywhere during such period. * * * The court further decrees that after six months from the date hereof this Interlocutory Decree shall be and become a final decree of divorce and the parties shall then be divorced, unless this Interlocutory Decree shall have been set aside, or an appeal has been taken, or a writ of error has been issued." On June 11, 1948, a final decree of divorce was entered.

In her income tax return for the year 1948, the taxpayer did not include as taxable income payments received from her husband under their agreement during the six months' period after entry of the interlocutory decree prior to the final decree of divorce, but only those amounts received after the entry of the absolute decree. The Commissioner determined a deficiency on the ground that when the taxpayer received such payments, she was "legally separated" within the meaning of Section 22(k) and the income was therefore taxable to her.

Following its decision in Eccles v. Commissioner, 19 T.C. 1049, later affirmed in Commissioner of Internal Rev. v. Eccles, 4 Cir., 208 F.2d 796, the Tax Court held that since the interlocutory decree did not immediately terminate the marriage, the wife was not "divorced or legally separated from her husband under a decree of divorce or of separate maintenance" within the meaning of Section 22(k), and therefore such amount received by her under the interlocutory decree was not taxable income to her. In

1. "Section 22. Gross income.

* * * * *

"(k) Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *"

the Eccles case, the taxpayer's wife was granted an interlocutory decree of divorce in the State of Utah, to become final after six months. The Tax Court held that under established Utah law, the taxpayer and his wife were still husband and wife until the final decree was entered, and were therefore entitled to file a joint income tax return covering the six months period under Section 51(b) of the Internal Revenue Code. In applying the reasoning of that case to the instant case, the Tax Court was of the opinion that although they arose under different sections of the Code, the basic question involved was the same. And, the law of Utah and Colorado in respect to the effect of interlocutory decrees of divorce being similar in text and construction, the reasoning in the Eccles case is apposite to the question involved here.

Chapter 56, Vol. 2, 1935 Colorado Stats. Annotated provides in part as follows: "§ 13. * * * If however, a divorce ought to be granted, the court shall enter an interlocutory decree, providing that the parties to such action shall be divorced six (6) months after the date of such interlocutory decree. During such six (6) months period the parties shall not be divorced and neither party shall contract another marriage during such period. During such period the court may, upon motion or petition of either party to the action, or upon its own motion, for good cause shown after a hearing, set aside such interlocutory decree. * * *"

■ In construing this statute, the Colorado courts have consistently held that an interlocutory decree of divorce does not dissolve the marriage relationship nor alter the marital status; that during the period after the interlocutory decree is entered, the parties might lawfully cohabit together as husband and wife, Doty v. Doty, 103 Colo. 543, 88 P. 2d 573; that the action is immediately abated by death of one of the parties pri-

or to the final decree of divorce, and a wife's right to inherit her husband's property survives an interlocutory decree of divorce. In re McLaughlin's Estate, 117 Colo. 67, 184 P.2d 130.

Manifestly, under Colorado law, the parties here were not "divorced" upon entry of the interlocutory decree, but the Commissioner contends that the term "decree * * * of separate maintenance" as used in Section 22(k) should be broadly construed to include all persons separated by some decree, regardless of the language used. It is argued that where, as here, a marriage has deteriorated to the point where the innocent spouse seeks the intervention of a court, and the court finds that the offending spouse has broken the marriage contract by his conduct and the innocent spouse is entitled as a matter of law to live separately without being guilty of desertion, then for the purposes of tax law, an "interlocutory decree of divorce" is in effect a "legal separation".

■■ Obviously, the terms "separate maintenance" and "interlocutory decree" as used in Colorado law are not synonymous. An interlocutory decree under Section 13, Chapter 56, C.S.A.1935, is intended to encourage a reunion of the parties—a healing of the breach—a period during which the parties may become reconciled; while "separate maintenance" under Section 25, Chapter 56 of the Colorado statute is intended to effect a permanent status—a final divorce from bed and board. Doty v. Doty, supra; 17 Am.Jur. p. 362, Sec. 435. Both of these terms have specific legalistic meanings, and if Congress had meant to include "interlocutory decree" in Section 22(k), it certainly would have been a simple matter for it to do so. We agree with the Tax Court that an interlocutory decree under Colorado law is not "separate maintenance" within the meaning of Section 22(k).

The decision is affirmed.