DONALD F. KOESTER, Appellant, *v.* ADMINISTRATOR OF THE ESTATE OF SHERRY A. KOESTER, DECEASED, Respondent.

No. 14083

January 4, 1985

693 P.2d 569

*Diehl, Evans & Associates,* Fallon, for Appellant.

*Warren W. Goedert,* Reno, and *Echeverria & Osborne,* Reno, for Respondent.

## OPINION

By the Court, MANOUKIAN, C. J.:

This is an appeal from an order granting a motion to construe an original and amended divorce decree and a motion to enter the original decree nunc pro tunc. That portion of the order appealed from which purports to construe the divorce decrees is nonappealable pursuant to NRAP 3A(b)(2) because it did not affect the rights of the parties growing out of final judgment. The nunc pro tunc entry of the original decree of divorce is, however, an appealable special order made after final judgment. Because the nunc pro tunc order was properly entered, validating an otherwise voidable divorce decree, that portion of the order below is affirmed.

Donald F. Koester and Sherry A. Koester were married in Reno on June 1, 1968. On November 20, 1978, Don filed for divorce and requested that the community property be divided. The lower court filed its "decision" on July 17, 1979, and ruled that 29.5 acres of land held by Sherry and Don in joint tenancy was the community property of the parties. The findings, conclusions and decree were prepared by Sherry's counsel and, sometime on July 30, 1979, the judge signed them. At 3:30 p.m. that afternoon, Sherry was killed in an automobile collision. The findings of fact, conclusions of law and decree of divorce were not filed with the clerk until July 31, 1979.

On October 29, 1979, the lower court amended its findings of fact and conclusions of law. Prompted by the probate proceedings in Sherry's estate, Don filed, on December 12, 1981, a motion for an order construing the original and the amended divorce

decrees. On December 28, 1981, Sherry's estate was allowed to intervene in the continuation of the divorce action. On that date, the estate opposed Don's motion for construction and also moved for entry of an order nunc pro tunc setting the time of filing of the original divorce decree back to July 17 or July 30, 1979.

On March 23, 1982, the lower court granted the estate's motion for an order nunc pro tunc and again stated that its "decision" of July 17, 1979 "determined that the real property and appurtenances were the community property of the parties. . . ." The order of March 23rd is the only order from which Don has appealed.[1]

1. *Appealability of the nunc pro tunc entry of the original decree of divorce.*

On appeal, Don contends that because Sherry died before the divorce decree was *filed,* NRCP 58(c) invalidated the decree. The estate, however, argues that NRS 17.140 permitted the lower court to enter formal judgment when, as in this case, a party dies after rendition of the decision. In response, Don argues that NRCP 58(c) and NRS 17.140 are inconsistent and that, therefore, NRCP 58(c) prevails. We disagree.

The rule and the statute are not inconsistent. NRCP 58(c) establishes when a judgment takes effect. NRS 17.140 preserves the benefits of a cause of action which has ripened into a jury verdict or a decision. *See* Bates v. Burns, 274 P.2d 569 (Utah 1954). NRS 17.140 modified the common law rule that all proceedings in a lawsuit were arrested by the death of a party. *See* Becker v. King, 307 So.2d 855 (Fla.App. 1975); Orton v. Adams, 444 P.2d 62 (Utah 1968).

This court has not interpreted NRS 17.140. A similar statute (Cal.Civ.Pro. Code § 669 West 1980) was interpreted in *John v. Superior Court,* 90 P. 53 (Cal. 1907), as permitting the entry of a final decree of divorce following the husband's death so long as the death occurred after a decision of all the issues of fact had been entered. *Id.* at 54. In the instant case, Sherry died after the lower court had entered its decision. Therefore, the lower court

---

[1]On September 1, 1982, the estate filed a motion to dismiss the appeal. The estate contended that pursuant to NRAP 3A(b)(2), the order construing the amended divorce decree and granting the motion for the nunc pro tunc entry of the original decree was nonappealable, in that, it was not a special order made after final judgment. This court, on December 20, 1982, ordered that judgment on the motion to dismiss would be reserved until briefing was completed because a determination of the appealability question necessarily involved a resolution of the merits of the appeal.

had the power, pursuant to NRS 17.140, to enter judgment after Sherry's death.

The final divorce decree, however, was entered in Sherry's name. Sherry's death was not suggested in the record, pursuant to NRCP 5, nor was a motion for substitution of proper parties made pursuant to NRCP 25(a). Because an administrator or a personal representative was not substituted for Sherry until after entry of the original divorce decree, this court, in its order of December 20, 1982, questioned the decree's validity.

Generally, the personal representative of the deceased must be substituted as a party before the deceased party's estate can be affected by any judgment. Boyd v. Lancaster, 90 P.2d 317, 319 (Cal.App. 1939). Even the presence of a statute similar to NRS 17.140 will not alter the rule that before a court may issue an order or judgment against or for a deceased party the personal representative must be substituted. *Cf.* Dorney v. Reddy, 357 N.Y.S.2d 21 (N.Y.App.Div. 1974) (In the face of N.Y.Civ.Prac. Law and Rules § 5016(d), dismissal order was void because decedent's personal representative had not been substituted). At best, if a party dies after commencement of an action and after the court has acquired personal jurisdiction over the party, a judgment rendered against a deceased party without substitution of the personal representative is voidable. Woolley v. Seijo, 36 Cal.Rptr. 762 (Ct.App. 1964). Therefore, the judgment entered against Sherry after death was voidable because her personal representative or administrator was not substituted.

The order from which Don has appealed entered the voidable divorce decree nunc pro tunc back to July 17, 1979. A post judgment order may be appealed only if it affects "the rights of the parties growing out of final judgment." Wilkinson v. Wilkinson, 73 Nev. 143, 145, 311 P.2d 735, 736 (1957). *See also* NRAP 3A(b)(2). In Nevada, a judgment may be amended nunc pro tunc if "the change will make the record speak the truth as to what was actually determined or done or *intended to be determined or done* by the court. . . ." Finley v. Finley, 65 Nev. 113, 119, 189 P.2d 334, 337 (1948), *overruled on other grounds,* Day v. Day, 80 Nev. 386, 395 P.2d 321 (1964). (Emphasis added.) The exercise of a "nunc pro tunc order . . . depends on the circumstances of a particular case and it is to be granted or refused as justice may require." Allen v. Allen, 70 Nev. 412, 415, 270 P.2d 671, 672 (1954).

Other jurisdictions have employed nunc pro tunc orders to

relate a final divorce decree back to a point in time before the death of a party

> *[i]f the facts justifying the entry of a decree were adjudicated during the lifetime of the parties of a divorce action, so that a decree was rendered or could or should have been rendered thereon immediately, but for some reason was not entered as such on the judgment record. . . .*

Thrash v. Thrash, 385 So.2d 961, 962-963 (Miss. 1980). *See also* Berkenfield v. Jacobs, 83 So.2d 265 (Fla. 1955); Becker v. King, 307 So.2d 855 (Fla.App. 1975); Caprita v. Caprita, 60 N.E.2d 483 (Ohio 1945); In re Tabery, 540 P.2d 474 (Wash.App. 1975). The instant case fits squarely within the general rule regarding nunc pro tunc entry of divorce decrees. Thus, the nunc pro tunc decree affects the rights of the parties arising out of the final decree because it validates an otherwise voidable decree of divorce.[2]

2. *Appealability of the order construing the original and amended divorce decrees.*

That portion of the March 23, 1982, order construing the divorce decrees, however, is not appealable as a special order made after final judgment. The lower court in its July 17th decision plainly stated that "[Don] failed to meet his burden of proving that [the 29.5 acres were] not the community property of the parties."[3] The formal findings and conclusions filed on July 31, 1979, and the amended findings and conclusions entered on October 29, 1979, substantially restated the decision. Finally, in its order construing the divorce decrees, the court reconfirmed its previous determination "that the real property and appurtenances were the community property of the parties . . . in spite of their method of holding title." Thus, the March 23rd order construing the original and amended decrees did not affect the rights arising out of the final judgment. *See generally* In re Enger's Will, 30 N.W.2d 694 (Minn. 1948); Meadow Valley M. Co. v. Dodds, 6

---

[2]Even under the general rule of *Finley,* the nunc pro tunc decree should be upheld. Although this power cannot be used to correct judicial errors or omissions, the court has the inherent power to correct mere clerical errors at any time. *Finley,* at 118-119, 189 P.2d at 336-337. This court has previously described entry of the judgment as a ministerial act. *See* Coleman v. Moore & McIntosh, 40 Nev. 139, 241 P. 217 (1925). Failure to file a final divorce decree then is a clerical omission.

[3]Because the original decree is not on appeal, we express no opinion on the ruling which placed the burden on Don to prove that the realty was his separate property. *See* Peters v. Peters, 92 Nev. 687, 557 P.2d 713 (1976).

Nev. 621 (1871); Schaff v. Kennelly, 69 N.W.2d 777 (N.D. 1955).

3. *Conclusion.*

The lower court's order which entered the original decree nunc pro tunc as of July 17, 1979, affected the rights arising out of final judgment because it validated the otherwise voidable decree which was entered after Sherry's death without substituting her personal representative. Thus, that portion of the March 23rd order is a special order made after final judgment appealable under NRAP 3A(b)(2).

That part of the March 23rd order which construed the original and amended divorce decrees was consistent with the court's original holdings and did not affect the parties' rights arising out of final judgment. Consequently, the appeal from that part of the March 23rd order which construed the divorce decrees is hereby dismissed.

The only issue properly before this court is the propriety of the nunc pro tunc entry of the original divorce decree. As the analysis of the appealability issue indicates, the lower court did not err in entering the divorce decree nunc pro tunc as of July 17, 1979. Thus, that part of the March 23rd order which granted the motion for nunc pro tunc entry of the original divorce decree is affirmed.

MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.

SPRINGER, J., dissenting:

I would reverse the judgment in this case. The decree of divorce was not filed until after the death of the wife. NRCP Rule 58(c) provides that a judgment is not effective until it is *entered* and that it is not entered until it is *filed.* There was, therefore, no judgment in effect at the time of the wife's death. When the wife died, property held in joint tenancy by the two parties vested in the surviving husband, the appellant; the question of divorce became moot. *See* Fox v. Fox, 84 Nev. 368, 441 P.2d 678 (1968); LaGrange Constr. v. Del E. Webb Corp., 83 Nev. 524, 435 P.2d 515 (1967); Fitzharris v. Phillips, 74 Nev. 371, 333 P.2d 721 (1958).

In my view, since the unfiled judgment was not "effective for any purpose,"[1] the death of the wife fixed the parties' status and property rights in joint tenancy property: the husband became a single man and the sole holder of property held by his wife and him in joint tenancy at the time of the wife's death.

NRS 17.140 provides that if a party dies after the decision, but before the judgment (the case here), "the court may nevertheless render judgment on the decision." There are three reasons why I

---

[1]NRCP 58(c).

think that this statute does not apply to the joint tenancy property in this case.

The first reason is that given above—the deceased's interest vested irrevocably in the survivor by the operation of the law at the time of death. The second reason is that the court's pre-death decision does not clearly adjudicate the matter, does not clearly order or declare the transmutation of joint tenancy property into community property.

The trial court merely concluded "that the plaintiff has failed to meet his burden of proving that real property in Lyon County is not the community property of the parties." There was not, however, in the decision itself any definitive order, declaration, or decision to the effect that the property in question had become community property.

The third reason for my opinion is that I do not believe the court had the power to transmute this joint tenancy property into community property.

NRS 125.150(1)(b)(2), which went into effect a few weeks before the pre-death decision, provides that a divorce court may dispose of "property placed in joint tenancy by the parties on or after July 1, 1979." This property was not placed in joint tenancy on or after July 1, 1979. Therefore, I would conclude, the legislature did not intend the court to dispose of such property in a divorce case. Further, even if the court had the power to "dispose" of such property, I do not believe that gives the court the power to transmute or change the nature of the property into community property, even if it had chosen to do so.

Certain issues other than those relating to the joint tenancy or marital status issue might be determined by a *nunc pro tunc* order, but this need not be considered in this appeal.

I would reverse and enter judgment declaring appellant-husband to be sole owner of the joint tenancy property.