ARTHUR J. PAVLUVCIK & another[1] *vs*. JUDITH E. SULLIVAN
& another[2]
(and a companion case[3]).

Middlesex.    May 22, 1986. — July 28, 1986.

Present: SMITH, WARNER, & FINE, JJ.

*Divorce and Separation,* Death of party, Separation agreement. *Contract,*
Separation agreement.

In the circumstances, this court concluded that the parties to a separation
agreement intended that it take effect no later than the date of the order
of a Probate Court judge approving it under G. L. c. 208, § 1A, and,
in the absence of any countervailing equities, the wife's unexpected
death after the judge's order, but before the entry of a judgment nisi,
did not relieve the husband of those provisions of the agreement concern-
ing the marital property and his rights in the wife's estate, including his
obligation to sell the marital home, which the parties had held as tenants
by the entirety, and to pay to the wife's estate a specified portion of the
net proceeds of the sale. [584-588]

CIVIL ACTIONS commenced in the Middlesex Division of the
Probate and Family Court Department on July 15, 1983.

The cases were consolidated for trial and were reported by
*William Highgas, Jr., J.*

*Leon O. LeMaire, III,* for the plaintiffs.

*Willie R. Brown,* for the defendants.

FINE, J. This case, before us pursuant to a reservation and
report by a judge of a Probate Court (G. L. c. 215, § 13),
concerns the effect on a separation agreement of the death of
one of the two parties seeking a divorce under the provisions
of G. L. c. 208, § 1A, where the death occurred after the agree-

---

[1] Mark P. Pavluvcik.

[2] Robert J. Pavluvcik.

[3] Judith E. Sullivan & Robert Pavluvcik *vs*. Arthur J. Pavluvcik.

ment was executed by the parties and approved by a judge and before entry of a judgment nisi. We rule that, in the circumstances, the surviving spouse remained bound by the provisions of the separation agreement.

The couple in question last lived together on February 27, 1981. A complaint for divorce was filed by the wife on July 16, 1982. A written separation agreement was executed on March 31, 1983. According to its terms, the agreement was to be incorporated and merged in the divorce judgment, if granted. It provided for alimony, custody, child support, payment of educational and medical expenses, maintenance of life insurance, division of the couple's personal property, and disposition of the husband's pension. It called for the husband to transfer a vehicle to the wife within one month of the agreement. The marital home in Chelmsford, owned by the couple as tenants by the entirety, was to be sold within two years of the date of the agreement, and the net proceeds were to be divided, 56% to the wife and 44% to the husband. Each party waived any claim to the estate of the other and released the other from past and future obligations. The agreement also provided that it was to be binding upon the heirs, representatives, and assigns of the parties. Nothing in the agreement suggested that the mutual promises the parties made were to be affected by the death of one or the other prior to the entry of a divorce judgment, except that the agreement did provide for the termination of the husband's alimony payments upon the death of the wife.

After a hearing on March 31, 1983, a probate judge found that the marriage had irretrievably broken down. In accordance with G. L. c. 208, § 1A, he approved the agreement, ordered the parties to comply with it forthwith, and ordered that the agreement be "incorporated and merged and become part of the [j]udgment [n]isi" which was to be entered six months later,[4] on October 3, 1983, without further action by the parties. At oral argument, the parties agreed that there had been partial performance of the agreement. Title to the vehicle was trans-

---

[4] The waiting period for entry of judgment nisi has been reduced to thirty days. St. 1985, c. 691, § 2.

ferred to the wife on May 2, 1983, and, presumably, weekly alimony and child support payments due beginning May 1, 1983, were paid. Then, unexpectedly, on May 14, 1983, the wife, forty-six years old at the time, died of a cerebral aneurysm.

Upon the wife's death, the husband and one of the three children of the marriage filed a complaint seeking a declaration that the separation agreement was null and void and that, therefore, no part of the real or the personal property covered by the separation agreement was to be included in the deceased wife's estate. A complaint was also filed by the other two children of the marriage, one of whom had been appointed administratrix of the deceased wife's estate. The administratrix and her brother sought, in essence, to have the separation agreement enforced according to its terms. The cross complaints were consolidated for trial before a probate judge who, after a hearing, concluded that the husband was bound by the terms of the separation agreement.[5] Thus, according to the judge, although upon the wife's death the husband had become the sole record title holder of the marital real estate, the husband was obligated to sell it within two years of the date of the execution of the agreement and to divide the proceeds with his wife's estate according to the formula set forth in the agreement.

The husband contends on appeal that the judge should have concluded that the agreement was to be effective only if a divorce should actually be granted. At the outset, two propositions the husband urges are well-settled. First, the death of the wife abated the divorce proceedings. *Diggs* v. *Diggs,* 291 Mass. 399, 401-402 (1935). *Pine* v. *Pine,* 323 Mass. 524, 525 (1948). *Ross* v. *Ross,* 385 Mass. 30, 35 (1982). The death of a party to a separation agreement, however, does not neces-

---

[5] The judge's findings related only to those provisions of the agreement which concerned the marital property, real and personal, and to the husband's rights in his wife's estate. Neither the trial judge nor any of the parties on appeal have addressed the question of what effect the wife's death had on other provisions of the agreement such as those requiring the husband to pay child support and medical and educational expenses for one child of the marriage who was a minor when the agreement was signed. Since we are not called upon in this case to decide those issues, we decline to do so.

sarily terminate the obligations provided for in the agreement. See *Taylor* v. *Gowetz,* 339 Mass. 294, 298-299 (1959); *Du-Mont* v. *Godbey,* 382 Mass. 234, 239-240 (1981). Second, we accept the proposition that the tenancy by the entirety in the real property, the principal subject of the present controversy, had not been converted to a tenancy in common by anything that had occurred prior to the wife's death. See *Campagna* v. *Campagna,* 337 Mass. 599, 605 (1958). Thus, sole record title to the real estate vested in the husband upon the death of his wife. Even though the husband became the record owner of the property, however, he might still be bound by his agreement to sell it and transfer to the wife's estate a portion of the net proceeds of the sale. See *Fitzgerald* v. *Trueworthy,* 476 A.2d 183 (Me. 1984).

The issue before us, whether the separation agreement was contingent upon the entry of a judgment of divorce nisi or whether it had full force and effect from the date it was executed, is governed by the intent of the parties. See *Moore* v. *Moore,* 389 Mass. 21, 23-25 (1983). We determine that intent by an analysis of the entire agreement and its context, and we conclude that the parties intended the agreement to have full force and effect as of at least the date of the order approving it, which happened in this case also to be the date the parties signed it. The agreement was a comprehensive and final settlement of the financial relationship of the parties, not only covering matters affecting their immediate situations, but also dividing their assets and resolving their inheritance rights and their responsibilities for each other's indebtedness. Such complete and permanent separation agreements, freely entered into by parties contemplating a divorce, are favored by the public policy of Massachusetts and generally are enforceable, absent "countervailing equities." See *Knox* v. *Remick,* 371 Mass. 433, 436-437 (1976); *Stansel* v. *Stansel,* 385 Mass. 510, 514-515 (1982); *Moore* v. *Moore,* 389 Mass. at 24; *Ratchford* v. *Ratchford,* 397 Mass. 114, 116 (1986).

As of the date of the agreement, the parties had lived separately for over two years and their marriage, as found by a judge, had irretrievably broken down. There was no indication

of any movement towards reconciliation or any other basis for an assumption that the parties would have abrogated the agreement if one of them had not died. The fairness and reasonableness of the agreement from the point of view of both parties was established by the judge's finding that, among other things, it made "proper provisions . . . for the disposition of marital property." The parties were ordered to comply with it forthwith, and nothing further was required of them for the judgment nisi to enter. The substantive judicial function with regard to the divorce had been fully performed. For the brief period during which the wife was alive following the agreement, the parties did comply with it. This conduct by the parties subsequent to execution of the agreement has some weight as an indicator of their intent that it be immediately effective.

There are no "countervailing equities" (see *Knox* v. *Remick*, 371 Mass. at 436-437) arising out of the wife's death such as to prevent the enforcement of the agreement. The decided cases have referred to two situations which may raise "countervailing equities," neither of which is present here. See *Randall* v. *Randall*, 17 Mass. App. Ct. 24, 29 (1983). The husband is not in danger of becoming a public charge, and there is no indication that the wife, while alive, failed to live up to her part of the bargain. Although a probate judge may find other equities a sufficient basis for denying enforcement, we think the equities here on the whole favor enforcement. The husband will be no worse off financially if the agreement is enforced than he would have been had the wife survived. We would be hesitant to assume, given the lengthy separation and the irretrievable breakdown of the relationship, that either party would have wanted the other to receive the bulk of his marital property in the event of the death of one of them before a final divorce. The risk of such an untimely death was borne by the parties equally. Under the construction which we adopt, had the husband and not the wife died in the interim between the date on which the agreement was executed and approved and the dates on which the judgments nisi and absolute were to enter, the husband's estate would have had the full benefit of the agreement. Specifically, the wife would have been obligated to sell

the marital premises within two years of the date of the agreement and pay the husband's estate 44% of the net proceeds, and she would have been denied any inheritance rights in his estate.

The husband bases his contention that the agreement was to be effective only if a divorce judgment actually entered on two points. He relies first upon the fact that, on the form the judge used to enter his March 31, 1983, order, he crossed out the printed language stating that "by agreement of the parties" the separation agreement "may also remain as an independent contract."[6] The husband asserts, therefore, that the agreement was intended to be merged in the divorce judgment and to have no independent significance apart from the divorce proceedings, which, because of his wife's death, could not proceed to their conclusion. The agreement itself is silent as to whether it was to have independent significance. In the absence of an express provision stating otherwise, a separation agreement is usually held to survive a subsequent divorce judgment incorporating its provisions. See *Surabian* v. *Surabian,* 362 Mass. 342, 345 n.4 (1972); *Moore* v. *Moore,* 389 Mass. at 24-25. We need not decide, however, whether this agreement was one which would have survived as an independent contract after the divorce because nothing turns on that fact. The incorporation and merger of the agreement in a divorce judgment would have made its terms binding on the parties as part of the judgment. Only the method of enforcing the terms of the agreement would have been affected by its also being an independent surviving agreement. "These terms ('independent' and 'surviving') don't come into play until one spouse seeks to enforce the separation agreement *outside* the Probate Court, as for ex-

---

[6] At the time that this divorce action and the separation agreement were before the Probate Court, G. L. c. 208, § 1A, inserted by St. 1975, c. 698, § 2, provided that the separation agreement "shall be incorporated and merged into [the court's order], and by agreement of the parties it may also remain as an independent contract." General Laws c. 208, § 1A, as amended through St. 1985, c. 691, § 2, now provides that "[t]he agreement either shall be incorporated and merged into [the court's] judgment or by agreement of the parties, it shall be incorporated and not merged, but shall survive and remain as an independent contract."

ample, in a separate contract action" (emphasis original). *Gott-segen* v. *Gottsegen,* 397 Mass. 617, 632 (1986) (Nolan, J., dissenting).

The husband also relies on certain language used by the parties in the agreement itself to support his contention that the agreement was contingent upon the granting of a judgment of divorce. The opening paragraph reads as follows: "Now come the parties and agree that if a divorce is entered in this matter the following terms and conditions may be incorporated and merged therein." And a final section recites, "This agreement shall be incorporated and merged in the Divorce Decree, if granted." We read both clauses as stating the parties' intention to have the final divorce judgment make the terms of the agreement judicially enforceable by contempt proceedings in the Probate Court, and not as suspending the effectiveness of the agreement until the actual entry of a divorce judgment. We do not suggest that the parties may not specifically agree that the death of either party before the judgment becomes absolute will render the agreement a nullity.

Absent some indication that a husband and wife did not intend that a separation agreement incorporating a permanent resolution of their mutual financial rights and obligations was to take effect as of the date of a court order under G. L. c. 208, § 1A, approving it, and absent any "countervailing equities," we rule that such an agreement may be enforceable even if one of the parties to it should die before the entry of a judgment nisi or absolute. There is authority from other jurisdictions which is of similar import. See *Bruce* v. *Dyer,* 67 Md. App. 499 (1986); *Shutt* v. *Butner,* 62 N.C. App. 701, 703-705 (1983); *Roberts* v. *Roberts,* 381 So. 2d 1333 (Miss. 1980); *In re Brown's Estate,* 28 Wash. 2d 436, 439-441 (1947); *In re Estate of Nelson,* 85 Wash. 2d 602, 609-610 (1975). See also *In re Garrity's Estate,* 22 Wash. 2d 391, 397-400 (1945). Where disposition of property held jointly by the spouses was in issue, some courts have reached the same practical result as we reach by determining that the property had been converted to a tenancy in common as a result of the provision in the separation agreement that the property be sold. See *Rucks* v. *Taylor,* 282 Ark. 200 (1984); *Wardlow* v. *Pozzi,* 170 Cal. App.

2d 208 (1959); *Snow* v. *Mathews,* 190 So. 2d 50 (Fla. Dist. Ct. App. 1966). Contra *In re Violi,* 65 N.Y. 2d 392 (1985). Some courts have declined to enforce a separation agreement after the death of one of the parties where language in the agreement indicated that the obligations were intended to be conditioned upon the granting of a divorce. See *Bassett* v. *First Natl. Bank & Trust Co.,* 189 Neb. 206, 210-211 (1972); *Garland* v. *Gilbert,* 85 Ohio App. 410 (1949). Compare *Day-walt* v. *Bertrand,* 10 Or. App. 418 (1972). The language in the agreements in those cases differed significantly from that in the one before us, which we conclude took effect no later than March 31, 1983, the date on which it was signed and approved, and which remained in effect after the wife's death.

Judgments shall enter in accordance with the findings and rulings entered in the Probate Court.

*So ordered.*