## Ratepayers Coalition of Rochester, et al. v. Rochester Electric Light and Power Company

[571 A.2d 606]

No. 87-306

Present: **Allen, C.J., Peck, Dooley and Morse, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed November 17, 1989

Motion for Reargument Denied December 19, 1989

328

*Thomas J. Kennedy*, St. Albans, for Plaintiffs-Appellants.

*Timothy Martin* of *Carroll, George & Pratt, Rutland*, for Defendant-Appellee.

**Peck, J.** A group of customers of the Rochester Electric Light and Power Company appeal from a Public Service Board order denying their petition seeking a declaration that existing company rates were illegal, and seeking injunctive and other relief against imposition of such rates. Defendant sought a rate increase, which was granted. The ratepayers were not given notice, and when they learned of the increase, they protested on grounds of lack of notice. We affirm.

Petitioners first sought relief in superior court, which was denied. We affirmed that denial in an unpublished entry order on February 5, 1988, on grounds that the proper forum was the Public Service Board (PSB) acting under 30 V.S.A. § 208. Petitioners then sought temporary and permanent injunctions from the PSB, challenging rates approved by the Board in its Docket No. 4984 on grounds of lack of notice of the proposed increase as required by 30 V.S.A. § 225(a). They also asked the Board for refunds of sums collected under the allegedly void tariff. The Board denied the petition, concluding that no notice to the ratepayers was mandated by 30 V.S.A. § 225(a)[1] and none was required either by the Vermont Administrative Procedure Act (3 V.S.A. § 809(a)) or the Due Process Clause of the Fourteenth Amendment. The Board also concluded that petitioners' substantive issues had been dealt with adequately in its decision in Docket 4984. The present appeal followed.

In *In re Allied Power & Light Co.*, 133 Vt. 586, 350 A.2d 360 (1975), we stated:

> The critical attack on the Board's validation of the various filings relates to the issue of notice. It is the position of the appellants that Title 30 requires direct notice to the customers of every rate change. In fact, 30 V.S.A. § 225 leaves that to the decision of the Board. Without an order from the Board public notice is accomplished by filing with the Board under 30 V.S.A. § 225, and kept on file in a form readily accessible to the public a copy of its schedule at every place where consumers or users make payments to the utility, under 30 V.S.A. § 228.

---

[1] 30 V.S.A. § 225(a) provides in pertinent part that

[w]ithin a time to be fixed by the board, each company subject to the provisions of this chapter shall file . . . schedules which shall be open to public inspection, showing all rates. . . . A change shall not thereafter be made in any such schedules, including schedules of joint rates or in any such rules and regulations, except upon forty-five days' notice to the board and to the department of public service, and such notice to parties affected by such schedules as the board shall direct. . . . Subject only to temporary increases, rates may not thereafter be raised without strictly complying with the notice and filing requirements set forth in this section. . . .

*Id.* at 590–91, 350 A.2d at 363. Petitioners seek first to distinguish *Allied Power & Light* because the initial adoption of General Order 55—the central issue in that case—was accompanied by "widespread notice and publicity," and the public had both special counsel as well as the Vermont Welfare Rights Organization involved throughout the litigation. We did not base our holding in *Allied* on public awareness, but rather on the clarity of the statute. Petitioners correctly point out that § 225(a) "indicate[s] a responsibility in the Board to make a decision of some kind, even if negative, with respect to additional notice of the new schedule." *Allied Power & Light*, 133 Vt. at 591, 350 A.2d at 363. Our holding in that case did not require a separate finding concerning such decision, but allowed the absence of an additional public notice requirement to be inferred from the Board order in question. *Id.* Here, the Board's order concluded that no additional public notice was required.

While petitioners contend this result "certainly was not contemplated by the legislature," history tells a different story. After the decision in *Allied Power & Light*, the Legislature amended 30 V.S.A. § 225(a) twice, first[2] to require that amended schedules be filed with the Department of Public Service as well as the Board, and second[3] to mandate strict compliance with the section's notice provisions. Though charged with knowledge of our longstanding interpretation of the statute, see *Scott v. St. Johnsbury Academy*, 86 Vt. 172, 175, 84 A. 567, 568 (1912), the Legislature did not amend it to provide for petitioners' interpretation (automatic notice to ratepayers whenever a rate change is contemplated). The omission is significant, especially since the latter amendment dealt with the subject of notice. See *Russell v. Lund*, 114 Vt. 16, 22, 39 A.2d 337, 341 (1944).

▮ Petitioners next argue that they were denied "an opportunity for hearing after reasonable notice" to all parties in a contested case,[4] as required by the Administrative Procedure

---

[2] 1979, No. 204 (Adj. Sess.), § 28.

[3] 1981, No. 226 (Adj. Sess.), § 1.

[4] As defined in 3 V.S.A. § 801(b)(2) a "'contested case' means a proceeding, including but not restricted to rate-making and licensing, in which the legal

Act. 3 V.S.A. § 809. See generally *In re Green Mountain Power Corp.*, 131 Vt. 284, 293, 305 A.2d 571, 577 (1973) (Court must consider fairness of whole procedure when reviewing administrative regulation). In the present case, petitioners' argument is circular, since they lacked party status which would have entitled them to notice under the APA. The issue is *whether* they were entitled to specific notice, after which they might have moved for party status in Docket 4984. Had they been entitled to notice, then arguably they could have acquired party status and would have been entitled to participate in the rate proceeding, as a contested case. Because petitioners' argument that § 225 mandates public notice of the company's rate filing is wrong, their argument under 3 V.S.A. § 809 is unsound.

Petitioners also argue that "[d]eprivation of such statutory rights of persons entitled to be parties certainly constitutes deprivation of due process under the Fourteenth Amendment to the United States Constitution." Again, because petitioners are not entitled to be parties, they have no statutory right to specific notice from the Board. Consequently, the Board did not deprive petitioners of any right granted by Vermont law.

Petitioners suggest that if the statute allows a rate increase without specific prior notice to ratepayers, the law deprives them of property without due process of law, contrary to Fourteenth Amendment guarantees. They frame their due process argument in terms of the statute's being void for vagueness or an invalid delegation of legislative power, and they offer no support for the application of either doctrine in the present circumstances. Nevertheless, we will assume that petitioners' argument raises an appropriate procedural due process claim, noting that courts have held that state action in regulating utilities can implicate due process values. See *Consumers Power Co. v. Michigan Pub. Serv. Comm'n*, 415 Mich. 134, 145, 327 N.W.2d 875, 878–79 (1982); Note, *Procedures for Termination of Utility Service: The Requirements of Due Process*, 64 Ky. L.J. 180 (1975).

---

rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for a hearing . . . ."

██ However the constitutional claim is framed, due process protections apply strictly only to agency determinations which are adjudicative in nature, rather than legislative. Ratemaking proceedings that affect customers of a utility generally are legislative in nature. See *Trybulski v. Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 8–9, 20 A.2d 117, 120–21 (1941); *Jones v. Montpelier & Barre Light & Power Co.*, 96 Vt. 397, 402–03, 120 A. 103–05 (1923); *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445 (1915). Increases in utility rates that affect all of the ratepayers, or classes of ratepayers, equally do not create property interests in particular ratepayers, even though the impact of a rate increase might be substantial.

██ In *Holt v. Yonce*, 370 F. Supp. 374 (D.S.C. 1973), *aff'd*, 415 U.S. 969 (1974), the ratepayers sought to enjoin a temporary rate increase on grounds very similar to those raised here: implementation of higher rates without a prior hearing. The petitioners relied on the landmark procedural due process cases of *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969), and *Goldberg v. Kelly*, 397 U.S. 254 (1970), arguing that they were being deprived of a property interest without a hearing. The trial court concluded that *Sniadach* and *Goldberg* dealt with the legal implications of a deprivation of individual rights without notice and a prior hearing, while in a ratemaking proceeding, no individual interests are implicated. 370 F. Supp. at 377; see *Sellers v. Iowa Power & Light Co.*, 372 F. Supp. 1169, 1172 (S.D. Iowa 1974); *Hartford Consumer Activists Ass'n v. Hausman*, 381 F. Supp. 1275, 1281 (D. Conn. 1974). Where individual electric service is to be terminated by a utility, due process rights are involved and due process standards of notice and an opportunity for a hearing must be observed because entitlement to electric service is a protectable property right. *Condosta v. Vermont Electric Cooperative, Inc.*, 400 F. Supp. 358, 365 (D. Vt. 1975).

██ Finally, petitioners contend that their right to intervene in rate proceedings under Vermont law and Board regulations implies a duty to give ratepayers, as potential intervenors, notice of pending rate changes. Having decided that the statute

granting the Board the power to determine the scope of public notice accords with due process, it would be anomalous to hold that the statute providing the mechanism for intervention somehow implied a more inclusive standard of public notice.

*Affirmed.*