## Estate of William A. Ladd v. Estate of Florence D. Ladd

[640 A.2d 29]

No. 92-108

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 14, 1994

*Mary G. Kirkpatrick* of *Lisman & Lisman*, Burlington, for Plaintiff-Appellee.

*Joseph S. Wool*, Burlington, for Defendant-Appellant.

**Gibson, J.** The issue before the Court in this divorce action is whether the death of a party during the nisi period abates the divorce and nullifies the parties' agreement dividing the marital property. We hold that the divorce is abated, but the agreement is enforceable independent of the divorce order. Accordingly, we reverse the family court's refusal to abate the divorce and its entry of an order nunc pro tunc making the decree nisi absolute on the day before the husband died.

The parties, both now deceased, were married on September 26, 1986. Florence Ladd left the marital residence in September 1990, and William Ladd filed for divorce two months later. After several delays, the final hearing was scheduled for July 10, 1991, but that morning the parties reached an agreement disposing of their property and settling William's embezzlement claims against Florence. After the agreement was finalized, the final hearing was held on August 12, at which time the court accepted the agreement and entered a decree nisi.

Neither party was present at the final hearing. William was in the hospital, and the court allowed his sister to testify as to the grounds of divorce. William's attorney asked the court to shorten the standard ninety-day nisi period to thirty days due to William's ill health. Florence's attorney objected to a shortened nisi period. Because the length of the nisi period was in dispute, the court denied the request and issued the final order. The order incorporated the settlement agreement and provided that the nisi period would end ninety days later, on November 12, 1991. William did not seek to appeal from the court's refusal to shorten the nisi period.

William died on November 8, 1991. On November 12, the day the nisi period was to expire, Florence filed a motion to strike the divorce action on the ground that the action abated along with William's death prior to the expiration of the nisi period. William's estate opposed the motion and moved for an order nunc pro tunc backdating the final divorce decree to a date prior to William's death. Another judge heard the motion and found it impossible to discern from the record of the divorce hearing whether the trial court had abused its discretion in denying the motion to shorten the nisi period. Nevertheless, the court concluded that, given the comprehensive settlement agreement and the seriousness of William's illness, the request to shorten the nisi period should have been granted. Based on this determination, the court denied Florence's motion to abate the divorce and modified the divorce order, nunc pro tunc, to shorten the nisi period so that it expired the day before William's death.

On appeal, Florence's estate contends that the court's decision should be reversed because it contravenes long-established Vermont case law holding that "*nisi* divorce decrees do not dissolve the marriages, and that the death of either party before they become absolute, abates the suit and . . . has no effect on the marital status." *In re Hanrahan's Will*, 109 Vt. 108, 128, 194 A. 471, 481 (1937). We agree that the court's decision denying Florence's motion to abate the divorce must be reversed due to the death of William during the nisi period, and that the nisi period could not be backdated by the issuance of a nunc pro tunc order. Because the parties had entered into a separation agreement, this does not end the matter, however. In the interests of judicial economy, we will also address whether the separation agreement survived the abatement of the divorce.

Section 554(a) of Title 15 provides that a divorce decree "shall be a decree nisi and shall become absolute at the expiration of three months from the entry thereof; but, in its discretion, the court which grants the divorce may fix an earlier date upon which the decree shall become absolute." In states like Vermont that provide for interlocutory divorce decrees followed by a nisi period, the parties are considered to be married throughout the interlocutory period. 2 H. Clark, The Law of Domestic Relations in the United States § 15.8, at 108 (2d ed.

1987). Thus, "if one of the parties dies during the interlocutory period, they are still married and the survivor will inherit." *Id.* at 109; see, e.g., *Keidel v. Keidel*, 383 A.2d 264, 267 (R.I. 1978) (divorce action, including interlocutory decree to partition real estate, abated upon death of party during nisi period); *Daly v. Daly*, 533 P.2d 884, 885–86 (Utah 1975) (divorce decree, including determination of property rights, became ineffective upon death of party during nisi period). Vermont accepted this "well settled" rule long ago. See *In re Hanrahan's Will*, 109 Vt. at 128, 194 A. at 481 (death of either party before divorce becomes absolute abates divorce).*

---

\* We disagree with the dissent's conclusion that the 1990 amendment to 15 V.S.A. § 554(b) was intended to overrule *In re Hanrahan's Will*, 109 Vt. 108, 128, 194 A. 471, 481 (1937). Prior to the 1990 amendment, § 554(b) provided that the trial court could reopen a divorce case and hear additional testimony at any time before the nisi period expired. This Court interpreted the provision to mean that "in order to alter or set aside a decree nisi under the statute, a hearing must be held and a new decree must be made before the nisi period expires." *Richwagen v. Richwagen*, 149 Vt. 72, 75, 539 A.2d 540, 542 (1987) (citing *Ford v. Ford*, 125 Vt. 21, 24, 209 A.2d 316, 319 (1965)) (emphasis added). In response to those cases, the Legislature amended subsection (b) to provide that a decree of divorce is a civil judgment subject to the Rules of Civil Procedure, including the rules regarding post-trial motions, and that the time from which any such motion is filed "shall run from the date of entry of the decree of divorce and not from the date the nisi period expires." The amendment further provided that "[t]he court shall retain jurisdiction to hear and decide the motion after expiration of the nisi period." This language evinces the Legislature's desire to prevent situations, made possible by *Richwagen* and *Ford*, where an appropriate amendment to a divorce decree is foreclosed solely because the court took too much time in responding to a timely motion to amend.

Thus, rather than reflect the Legislature's dissatisfaction with the lack of finality of divorce decrees, as the dissent states, the 1990 amendment simply embodies the Legislature's intention to overrule our prior case law imposing a rigid finality on divorce matters subsequent to the nisi period. Indeed, subsection (a) of § 554, which provides that a divorce becomes absolute three months after the decree of divorce, remains intact; the Legislature specifically rejected language that would have eliminated nisi decrees altogether. See Sen. J. 145 (Feb. 14, 1990, Vt. Adj. Sess.); House J. 985 (Apr. 27, 1990, Vt. Adj. Sess.). The fact that the Legislature rejected an amendment that would have removed the nisi period entirely suggests it accepted this Court's previous determination that divorce decrees abate upon a party's death during the nisi period. See *Ratepayers Coalition of Rochester v. Rochester Elec. Light & Power Co.*, 153 Vt. 327, 330, 571 A.2d 606, 608 (1989).

The trial court cannot employ a nunc pro tunc order to change this law. The purpose of a nunc pro tunc order is "to set the effective date of a present order at a particular and appropriate time in the past, on the basis that the correct entry was inadvertently or mistakenly departed from by the court involved." *In re Parizo*, 137 Vt. 365, 367, 404 A.2d 114, 115 (1979); see Annotation, *Entering Judgment or Decree of Divorce Nunc Pro Tunc*, 19 A.L.R.3d 648, 652 (1968) ("the ordinary ground justifying an entry of [a nunc pro tunc] decree is that a divorce decree has actually been made or rendered previously or the successful party is otherwise entitled to such a decree, but entry of the decree has been omitted or delayed through inadvertence or mistake, or the decree has otherwise not been properly entered"). Although a nunc pro tunc order may be used to change the date of the decree nisi from the date it was entered to the date it was announced or issued by the court, it may not be used to shorten the statutory waiting period retroactively. See Annotation, *supra*, 19 A.L.R.3d §§ 7, 9, 10(a), at 659–71 (cases cited therein); cf. *Kern v. Kern*, 67 Cal. Rptr. 802, 807 (Ct. App. 1968) (nunc pro tunc order backdating final divorce decree upheld where statute permitted entry of final judgment during interlocutory period upon death of party).

Nor can the trial court employ a nunc pro tunc order to correct a prior decision by another judge in the same court. See *Koester v. Estate of Koester*, 693 P.2d 569, 573 n.2 (Nev. 1985) (nunc pro tunc order cannot be used to correct judicial errors or omissions). In effect, the second judge's nunc pro tunc order constituted an improper lateral review of the prior judge's exercise of discretion in denying William's motion to shorten the nisi period. See *Economou v. Economou*, 133 Vt. 418, 422, 340 A.2d 86, 88 (1975) ("The appellate process must proceed vertically, not sideways.").

Part of the court's reasoning in issuing the nunc pro tunc order was that the parties' separation agreement would otherwise be abated along with the divorce action. But that is not the case here. We conclude that the parties' stipulated agreement is enforceable independent of the divorce decree in which it was incorporated. Although this issue was not addressed by the trial court, it was raised by the parties there, and, in any case, we may construe the legal effect of a contract in the first instance

in this Court. See *Vermont Nat'l Bank v. Chittenden Trust Co.*, 143 Vt. 257, 266–67, 465 A.2d 284, 290 (1983) (construction of contract terms is matter of law rather than factual determination; therefore, this Court must review proper legal effect of contract language for itself); *In re Estate of Pickrell*, 806 P.2d 1007, 1011 (Kan. 1991) ("The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court.").

Before examining the instant agreement, we review the relevant law. The death of a party to a contract does not necessarily terminate the obligations stated in the agreement, unless those obligations are personal in nature. 18 S. Williston, A Treatise on the Law of Contracts § 1945, at 75–76 (3d ed. 1978). Moreover, "[a] pretrial agreement to distribute property is a contract, which the court can set aside only for grounds sufficient to set aside a contract." *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990); see *Bruce v. Dyer*, 524 A.2d 777, 786 (Md. 1987) ("general principles governing other types of contracts apply to property settlement agreements between husband and wife"). Accordingly, courts have held that the abatement of a divorce decree due to the death of one of the parties during the nisi period does not render a settlement agreement unenforceable simply because it was incorporated in the decree. See Annotation, *Separation Agreements: Enforceability of Provision Affecting Property Rights upon Death of One Party Prior to Final Judgment of Divorce*, 67 A.L.R.4th 237, 241, 245 (1989) (cases cited therein).

The critical inquiry is whether the parties intended the separation agreement to be contingent upon the entry of a judgment—either nisi or absolute—or to be effective from the date the agreement was executed. *Pavluvcik v. Sullivan*, 495 N.E.2d 869, 872 (Mass. App. Ct. 1986). Although the circumstances surrounding the settlement agreement may be a factor in making this determination, the language of the agreement itself must be examined first and foremost. Not surprisingly, courts have enforced settlement agreements which expressly provided that they were conclusive regardless of whether either party died before the divorce became final, see *In re Garrity's Estate*, 156 P.2d 217, 220 (Wash. 1945), or that they were not contingent upon the procurement of a divorce. See *Roberts v. Roberts*, 381 So. 2d 1333, 1334 (Miss. 1980).

But courts have also enforced settlement agreements independently of divorce decrees when the agreements expressly provided that they were enforceable against the personal representatives, heirs and assigns of the parties. See, e.g., *Bruce*, 524 A.2d at 787 (courts have recognized that death of spouse before final divorce decree does not, of itself, terminate separation agreement, particularly where agreement binds parties' heirs and assigns); *Shutt v. Butner*, 303 S.E.2d 399, 401 (N.C. Ct. App. 1983) (few contracts are terminated by death in absence of explicit provision to contrary; property settlement agreement held enforceable because of provision making agreement enforceable against heirs and assigns). Courts have also found settlement agreements enforceable, despite the lack of a final divorce decree, when the agreements contemplated a comprehensive and final settlement of the parties' financial relationship. See, e.g., *Simpson v. King*, 383 S.E.2d 120, 122 (Ga. 1989) (provision in agreement expressed parties' desire to settle all issues of alimony, property division, and other matters arising out of their relationship); *Pavluvcik*, 495 N.E.2d at 872–73 (parties intended settlement agreement, which was comprehensive and final settlement of their financial relationship, to be enforceable as of date of order approving it).

■ In the present case, the stipulation constituted a final and comprehensive settlement of all financial matters between the parties. Further, the stipulation included provisions in which the parties agreed to take all action necessary to carry out the agreement and to waive all rights of inheritance arising from the marital relationship. The waiver provision expressly applied to the parties' heirs and assigns. Finally, neither the wife's estate nor any provision in the separation agreement suggests that the agreement was dependent on the finality of the parties' divorce. Cf. *Pavluvcik*, 495 N.E.2d at 874 ("In the absence of an express provision stating otherwise, a separation agreement is usually held to survive a subsequent divorce judgment incorporating its provisions."). Indeed, the parties informed the trial court before the final hearing that they wanted sums owed under the agreement paid before its incorporation into the divorce order. We conclude that the husband's death abated the parties' divorce, but did not terminate the separation agreement, which unambiguously indicated the parties' in-

tention that it stand independent of the divorce decree. Therefore, the agreement survives the abatement of the divorce and is enforceable in the probate court or in subsequent litigation between the estates.

*Reversed and remanded to the family court for dismissal of the divorce proceeding.*

**Morse, J.,** dissenting. The Court holds that a divorce is final only when the nisi period is "absolute." If a party dies before then, the divorce "abates" and is "nullified." Not only does this sound archaic, the holding undermines the purpose of nisi decrees and is contrary to a recent amendment to the statute governing them. I respectfully dissent.

The only Vermont precedent underpinning the Court's senseless result is dictum in *In re Hanrahan's Will,* 109 Vt. 108, 128, 194 A. 471, 481 (1937) ("well settled that *nisi* divorce decrees do not dissolve the marriages, and that the death of either party before they become absolute, abates the suit and it has no effect on the marital status"), which reflects a classic misunderstanding about the nisi decree. We should welcome this opportunity to correct it.

The word "nisi" is Latin for "unless." Black's Law Dictionary 944 (5th ed. 1979). A "nisi decree" is a judgment that will "stand as valid and operative *unless* the party affected by it shall appear and show cause against it, or take some other appropriate step to avoid it or procure its revocation." *Id.* (emphasis in the original). See, e.g., *Silverstein v. Silverstein,* 308 N.E.2d 773, 774 (Mass. App. Ct. 1974) (nisi period gives interested party time to challenge decree's validity).

The nisi decree's purpose is to discourage divorces. Note, *Interlocutory Decrees of Divorce,* 56 Colum. L. Rev. 228, 228 (1956). It seeks to do this in two ways. First and foremost, it provides a cooling-off period to encourage reconciliation. See, e.g., *Commissioner of Internal Revenue v. Evans,* 211 F.2d 378, 380 (10th Cir. 1954) (nisi decree encourages "a reunion of the parties—a healing of the breach—a period during which the parties may become reconciled"). But also, the nisi period seeks to prevent immediate remarriage. *Interlocutory Decrees, supra,* at 228. The desire to remarry is assumed to be a primary motive for divorce. Because a divorced person could easily

evade one state's law forbidding remarriage within a certain time period by remarrying in another state, interlocutory, or nisi, divorce decrees were adopted to enforce the policy of delaying remarriage. *Id.*

Dead litigants do not reconcile or remarry; therefore, no prospective purpose is served by stopping the divorce. On the other hand, policies concerning the finality of judgments and reliance on them require that a divorce judgment become final when one of the parties dies before the nisi period ends. Parties to a divorce should be treated like other litigants. Neither *Hanrahan* nor the precedents upon which it is based address, in any reasoned way, why a person who has pursued a divorce to judgment and never sought to alter that judgment should not be entitled to rely on it.

*Hanrahan* rests on the formalistic notion that, because divorce is an action to sever a personal relationship or status, the death of a party "settle[s] the question of separation beyond all controversy and deprive[s] the court of jurisdiction" over, not only the parties, but also the subject matter of the action. *Bushnell v. Cooper*, 124 N.E. 521, 522 (Ill. 1919). This Court has already departed from this rigid application of divorce provisions. In *Poston v. Poston*, 160 Vt. 1, 5, 624 A.2d 853, 855 (1993), we recognized the doctrine of "divisible divorce," where all issues incident to a divorce may be severed from the decision on marital status. Even if, as the older cases suggest, death terminates the marriage status and makes divorce unnecessary, there is no rationale for upsetting the remainder of the divorce judgment disposing of the parties' property.

Apart from my basic disagreement with case law interpreting the effect of death during the nisi period, in 1990 the Legislature amended the statute governing the nisi decree. 15 V.S.A. § 554(b) (effective June 4, 1990). In my view, the amendment overruled *In re Hanrahan's Will.* Section 554(b) now provides:

> Either party may file any post-trial motions under the Vermont Rules of Civil Procedure. The time within which any such motion shall be filed shall run from the date of entry of the decree of divorce and not from the date the nisi period expires. The court shall retain jurisdiction to hear and decide the motion after expiration of the nisi period. A

decree of divorce shall constitute a civil judgment under the Vermont Rules of Civil Procedure.

Before this amendment, a divorce judgment could be reopened, abated, or changed in any respect during the nisi period. Consequently, the judgment could not become final. See *Richwagen v. Richwagen*, 149 Vt. 72, 75, 539 A.2d 540, 542 (1987) (court lacks subject-matter jurisdiction to decide timely motion to amend under V.R.C.P. 52(b) after nisi period expires). The *Richwagen* anomaly was fixed by the 1990 amendment. The amendment reflects the Legislature's dissatisfaction with this lack of finality and, as a remedy, directs that a divorce judgment be treated like any civil judgment. At the time of this amendment, the Legislature considered dispensing with the nisi period altogether but eventually decided to retain it. See 1989, No. 227 (Adj. Sess.), § 1; Sen. J. 145 (Feb. 14, 1990, Vt., Adj. Sess.); House J. 985 (Apr. 27, 1990, Vt., Adj. Sess.). Vermont is one of only a small minority of jurisdictions that now require a nisi period. 2 H. Clark, The Law of Domestic Relations in the United States § 15.8, at 108 (2d ed. 1987). The most reasonable explanation for keeping the nisi decree is the traditional nisi purpose, leaving open a possibility for reconciliation. To accomplish that purpose, it is neither necessary nor reasonable to nullify the divorce when a party dies during the nisi period.

Consequently, the contract analysis undertaken in today's opinion to avoid the absurd and obviously inequitable result engendered by not giving effect to the divorce judgment is unnecessary. I presume the Court would indulge in analogous reasoning if the divorce judgment had been judge-made after a contested hearing rather than party-made in an uncontested hearing. After all, regardless of whether the property division results from litigation or stipulation, parties who have submitted themselves to the jurisdiction of the court have agreed to be bound by the final divorce judgment. If I am wrong, then further mischief shall surely be visited upon unsuspecting litigants.

I would affirm the denial of the motion to abate. I am authorized to say that Justice Johnson joins in the dissent.