NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 88

No. 2021-077

Caroline Maier

v.

Siegfried Maier


John W. Valente, J.

Nancy Corsones and Wendy Fitzsimons of Corsones and Fitzsimons, LLP, Rutland, for
  Plaintiff-Appellee.

Barney L. Brannen and C. Justin Sheng of Brannen & Loftus, PLLC, Hanover, New Hampshire,
  for Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

Supreme Court

On Appeal from
Superior Court, Bennington Unit,
Family Division

September Term, 2021

¶ 1.     **ROBINSON, J.**     Husband's estate, through a special administrator, appeals the family division's order concluding that in light of husband's death prior to entry of a final divorce order it lacked jurisdiction to consider the enforceability of the parties' stipulated agreement. We conclude that the family division correctly determined that it lacked jurisdiction. Although the parties' agreement may be enforceable as a contract independent of the anticipated divorce, the civil division of the superior court, and not the family division, is the proper forum for litigating that issue. We thus affirm.

¶ 2.     This case returns to the Court after we dismissed an interlocutory appeal involving the parties' divorce. Maier v. Maier, 2020 VT 63, ¶ 3, __ Vt. __, 238 A.3d 681 (Maier I). The

relevant procedural history is as follows. Wife filed for divorce in 2018. At that time, husband was under guardianship. In 2019, the parties filed a stipulated settlement agreement with the family division. Before the court responded, wife filed a motion to withdraw the divorce complaint and set aside the parties' stipulation. The court denied wife's motion to dismiss the divorce action and ordered an evidentiary hearing to evaluate the parties' stipulation. See Pouech v. Pouech, 2006 VT 40, ¶ 22, 180 Vt. 1, 904 A.2d 70 (holding that where party challenges stipulated agreement in anticipation of divorce before family division approval, court must consider whether agreement is fair and equitable and may reject stipulation "even if the challenging party fails to demonstrate grounds sufficient to overturn a contract").

¶ 3. We accepted wife's interlocutory appeal to determine whether wife could dismiss the divorce action against her incompetent spouse and, if so, whether husband's guardian could pursue a counterclaim for divorce. Maier I, 2020 VT 63, ¶ 1. However, before oral argument, husband died. Because husband's death abated the divorce action, we dismissed the appeal as moot. Id. ¶ 3. We rejected the estate's argument that the Court should keep the appeal to decide whether the parties' agreement remained enforceable, or to determine the proper forum to decide that issue in the first instance. We concluded that those issues were not within the scope of the interlocutory appeal, as they had not been considered by the family division. Id. ¶ 4. We indicated that, upon dismissal, the matter would return to the family division as the court from which the appeal was taken, and noted that the parties could then litigate the remaining questions, including the appropriate forum for determining the enforceability of their agreement. Id. ¶ 5.

¶ 4. Shortly thereafter, the probate division appointed David Otterman as special administrator of husband's estate pending resolution of the issues surrounding the enforceability of the settlement agreement. Subsequently, wife filed a motion for summary judgment in the family division, arguing that the settlement agreement was unenforceable for several reasons unrelated to husband's death. The court issued an order stating that it could not consider the merits

2

of wife's motion until it determined whether it was the appropriate forum to litigate that issue. The court ordered the parties to file memoranda on the appropriate forum for litigating the enforceability of the parties' settlement agreement. Without briefing or analysis, the parties submitted memoranda stating that the family division was the appropriate forum to hear the issue.

¶ 5. In response, the family division issued an order of its own accord dismissing the case. It explained that the family division is a court of limited jurisdiction with the power to hear and determine divorce complaints and distribute marital assets. See 4 V.S.A. § 33. Because husband died prior to judgment, the court reasoned that "[n]o marriage survives to divorce, no marital assets exist to distribute, and no independent determination of an equitable distribution has occurred. There are no matters pursuant to 4 V.S.A. § 33 before the [family division]." The court concluded that it lacked jurisdiction to adjudicate the parties' competing claims concerning the enforceability of the settlement agreement, and dismissed the matter. The family division denied the estate's motion for reconsideration, and the estate appealed.

¶ 6. On appeal, the special administrator argues that the family division erred by concluding that it lacked jurisdiction to consider the enforceability of the settlement agreement. It maintains that under Estate of Ladd v. Estate of Ladd, 161 Vt. 270, 640 A.2d 29 (1994), the agreement may survive the abatement of a divorce action if the agreement shows that the parties intended it to take effect notwithstanding a final decree of divorce. The special administrator contends that the family division is the most appropriate forum to determine whether the agreement is enforceable and whether it is fair and equitable, but suggests that the civil and probate divisions might also have jurisdiction to consider the issue.

¶ 7. Wife argues that the estate's claim regarding the enforceability of the settlement agreement does not survive husband's death, so the special administrator lacks standing to bring this appeal. On the merits, she argues that because the family division did not approve the settlement agreement prior to husband's death, after considering the factors set forth in Pouech,

3

2006 VT 40, ¶ 23, the agreement is unenforceable as a matter of law. She argues that if the agreement is enforceable, the family division is the proper forum for conducting a hearing to consider the Pouech factors.

¶ 8.     We reject wife's arguments that the special administrator lacks standing to pursue this appeal, and conclude on the merits that the family division properly dismissed the divorce action which abated as a result of husband's death. Because the issue will arise following our resolution of this appeal, we address the potential enforceability of the parties' agreement, the proper forum for litigating the question, and the applicable standards. We conclude that the agreement may be enforceable in the civil division of the superior court provided the civil division determines that the parties intended to be bound by the agreement independent of the divorce action and concludes that the agreement is fair and equitable.

## I. Special Administrator's Standing

¶ 9.     Wife argues that the special administrator lacks standing because the estate's claim to enforce the agreement does not survive husband's death. She essentially argues that the divorce action, and any other action to enforce the contract, is moot, and therefore the special administrator lacks standing. See Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1101 ("A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case.").

¶ 10.     In so arguing, wife has collapsed the standing question into the merits of the jurisdictional question. We have emphasized that "standing and the merits [of a claim] are separate inquiries, such that the former does not depend on the latter." Wool v. Off. of Pro. Regul., 2020 VT 44, ¶ 11, 212 Vt. 305, 236 A.3d 1250. It is true that if husband's death abated the divorce action such that the family division has no jurisdiction to consider the parties' competing claims concerning the agreement, any claims in the family division based upon the agreement are moot. But whether that is the case is precisely the issue before us. In considering wife's argument for

4

dismissal of this appeal on the basis that the special administrator lacks standing, we consider whether the special administrator has legal standing to litigate that question through to its conclusion.

¶ 11. Vermont law permits a special administrator to "commence, prosecute, or defend, in the right of the deceased, actions that survive to the executor or administrator and are necessary for the recovery and protection of the property or rights of the deceased," and to "prosecute or defend the actions commenced in the lifetime of the deceased." 14 V.S.A. § 1401.; see also id. § 1451 (surviving actions include "actions that survive by common law"). A special administrator "may commence and maintain actions as an administrator." Id. § 963.

¶ 12. The special administrator's appeal falls within this general grant of authority. The action on appeal was commenced during husband's lifetime, and the special administrator claims the parties' agreement survives husband's death and seeks to enforce that agreement. Accordingly, we decline to dismiss this appeal on the basis that the special administrator lacks standing.

II. Merits of Appeal

¶ 13. The narrow question directly before us is whether the family division erred in concluding that it lacked jurisdiction to evaluate the enforceability of the parties' agreement because husband's death abated the divorce action.

¶ 14. The scope of the family court's jurisdiction is a question of law that we review without deference to the trial court. See Cameron v. Rollo, 2014 VT 40, ¶ 7, 196 Vt. 346, 97 A.3d 454 (reviewing without deference civil division's determination that family division had exclusive jurisdiction over action to recover property acquired during marriage subsequently declared void).

¶ 15. We conclude that the trial court correctly determined that it lacked jurisdiction to consider the State's claim to enforce the parties' agreement. The family division is a court of limited jurisdiction, and husband's death abated the divorce action, including any claims relating

5

to property division incident to the divorce. As set forth more fully below, nothing in our decision in Ladd suggests otherwise.

¶ 16. The family division is a court of limited jurisdiction over matters established by statute, which include divorce proceedings. 4 V.S.A. § 33(a)(4) (identifying specific matters with respect to which family division of superior court has exclusive jurisdiction). Cf. id. § 31 (assigning to civil division original and exclusive jurisdiction of all original civil actions except as otherwise assigned to different division, the judicial bureau, or Supreme Court).

¶ 17. Our law is clear that the death of either party prior to a final divorce order abates a divorce action. See Aither v. Estate of Aither, 2006 VT 111, ¶ 5, 180 Vt. 472, 913 A.2d 376. When a party to a divorce action dies during the pendency of the action, the marriage dissolves "by operation of law at the time of death." Id. At that point, "the object sought to be accomplished by the final decree, . . . the dissolution of the marriage relation, is already accomplished by the prior death" and the divorce action abates. Id. (quotation omitted); see also Ladd, 161 Vt. at 272, 640 A.2d at 30 (holding that one party's death before the nisi period expired abated the divorce); In re Hanrahan's Will, 109 Vt. 108, 128, 194 A. 471, 481 (1937) ("It is well settled that . . . the death of either party before [a divorce order becomes final] abates the suit and it has no effect on the marital status.").[1]

¶ 18. Because the family division's jurisdiction to divide marital property in a divorce is incident to its jurisdiction to enter a divorce judgment, abatement of the divorce terminates the family division's authority to divide marital property, whether pursuant to a stipulation or a

---

[1] We do not suggest that a party's death abates the family division's jurisdiction to enforce orders issued by the family division before that party's death. See 15 V.S.A. § 603 (describing family division's authority to enforce its orders through contempt proceedings); Aither, 2006 VT 111, ¶¶ 8-12 (recognizing family division's authority to enforce temporary orders through contempt proceedings following death of party and abatement of divorce action). In addition, we note that subsequent to our decision in Ladd the Legislature amended 15 VS.A. § 554 to provide that "[i]f one of the parties dies prior to the expiration of the nisi period, the decree shall be deemed absolute immediately prior to the death." See 1995, No. 94 (Adj. Sess.), § 1.

6

contested hearing. See 15 V.S.A. § 751 (describing family division's authority to divide parties' property in "a proceeding under [the] chapter" that applies to annulment and divorce proceedings). The family division's authority to divide marital property in the context of divorce depends on the continuing existence of a divorce action. When the divorce action abates, the family division's authority to divide marital property abates.

¶ 19. There is no exception to this rule that allows the family division to continue to assert its divorce jurisdiction following the death of one party prior to any final divorce order in order to evaluate or enforce a marital settlement agreement between the parties. Contrary to the special administrator's argument, our decision in Ladd does not suggest otherwise. In that case, the family division[2] issued a final divorce order embodying the parties' property settlement agreement on August 12, 1991. The court rejected the husband's request to shorten the nisi period, and set the nisi period to expire on November 12.[3] After the husband died on November 8, the wife filed a motion to strike the divorce action on the ground that the action abated when husband died prior to the end of the nisi period. A different trial court judge heard the motion and concluded that the trial court that granted the final divorce should have shortened the nisi period, so the court modified the divorce order retroactively to shorten the nisi period so that it expired the day before the husband's death. Ladd, 161 Vt. at 272, 640 A.2d at 30. On appeal, this Court reversed, explaining that the law was well settled that if one of the parties dies during the interlocutory nisi period, the divorce is abated and the order determining the parties' respective property rights becomes

_____

[2] In 2010, the Legislature restructured the Vermont Judiciary and established the family division of the superior court. 2009, No. 154 (Adj. Sess.), § 7. We use the term "family division" to refer to what was typically described, pre-restructuring, as the "family court."

[3] A decree nisi is a "court's decree that will become absolute unless the adversely affected party shows the court, within a specified period of time, why it should be set aside." Decree nisi, Black's Law Dictionary (11th ed. 2019). In Vermont, an initial divorce decree is a decree nisi that becomes absolute after ninety days, or at an earlier date in the court's discretion. 15 V.S.A. § 554(a).

ineffective.  Id. at 272-73, 640 A.2d at 30-31.  The Court accordingly reversed the trial court's order denying the wife's motion to abate the divorce and remanded for the family division to dismiss the divorce proceeding.  This Court's express words in Ladd, as well as our reasoning and mandate, reinforce our conclusion that the family division did not have the authority to keep a divorce action open for the purpose of enforcing the parties' marital settlement agreement.

¶ 20.  "In the interests of judicial economy," the Court went on to consider whether the separation agreement survived the abatement of the divorce.  Id. at 272, 640 A.2d at 30. Concluding that it did, we reasoned that "[t]he death of a party to a contract does not necessarily terminate the obligations stated in the agreement, unless those obligations are personal in nature." Id. at 275, 640 A.2d at 32 (citing 18 S. Williston, A Treatise on the Law of Contracts § 1945, at 75-76 (3d ed. 1978)).  We stated that for that reason "courts have held that the abatement of a divorce decree due to the death of one of the parties during the nisi period does not render a settlement agreement unenforceable simply because it was incorporated in the decree."  Id.  We explained that "the critical inquiry" is whether the parties intended the agreement to take effect upon execution, or only upon entry of a final divorce judgment.  Id.  We recognized that courts have enforced marital settlement agreements independently of divorce decrees when the agreements expressly provided that they were not contingent upon a final divorce; when they expressly provided that they were enforceable against the personal representatives, heirs, and assigns of the parties; and when the agreements contemplated a comprehensive and final settlement of the parties' financial relationship.  Id. at 276, 640 A.2d at 32.

¶ 21.  Applying these considerations in Ladd, the Court concluded that the parties' stipulated agreement constituted a final and comprehensive settlement of all financial matters between the parties; included provisions in which the parties agreed to take all necessary action to waive all rights of inheritance arising from the marital relationship and made those provisions binding on the parties' heirs and assigns; and contained no language suggesting that the parties

8

intended for its effect to be contingent on a final divorce order. Id. at 276, 640 A.2d at 32-33. For these reasons, the Court concluded that the husband's death abated the parties' divorce but did not terminate the separation agreement, which unambiguously reflected the parties' intention that it stand independent of the divorce decree. Id. at 276-77, 640 A.2d at 33. We concluded, "Therefore, the agreement survives the abatement of the divorce and is enforceable in the probate court or in subsequent litigation between the estates." Id. at 277, 640 A.2d at 33. See also Woods v. Woods, 161 Vt. 627, 627-28, 641 A.2d 363, 364 (1994) (mem.) (describing Ladd as holding that "the husband's death within the nisi period abated the parties' divorce, but did not terminate a separation agreement, which was intended by the parties to stand independent of the divorce decree.").

¶ 22. Nothing in the Court's analysis in Ladd regarding the enforceability of the parties' agreement suggested that it was enforceable in the family division, and the Court's express conclusion that the trial court erred in denying the wife's motion to abate the divorce action, its indication that the agreement is enforceable in a different division from the family division, and its mandate remanding to the family division for dismissal of the divorce proceeding make crystal clear that the Court did not intend to suggest that the agreement might be enforceable in the family division notwithstanding husband's death and abatement of the divorce proceeding.

¶ 23. For these reasons, we conclude that the family division did not err in concluding that it lacked jurisdiction to hold a hearing to determine whether the parties' stipulated agreement was enforceable, and we affirm.

### III. Guidance for Further Proceedings

¶ 24. Although the above analysis resolves the narrow question before us on appeal, we are mindful that the bigger questions remain unanswered: whether, in what forum, and pursuant to what standards the parties' agreement may be enforced. These questions are purely legal, the trial court addressed them, the parties have fully briefed them on appeal, and they will unquestionably

9

arise following dismissal of the divorce action. Rather than leave these questions unresolved with the likelihood of yet a third appeal to this Court in the context of an action in a different docket, we address these questions in the name of judicial economy. See Towns v. N. Sec. Ins. Co., 2008 VT 98, ¶ 16 n.4, 184 Vt. 322, 964 A.2d 1150 (concluding Court could appropriately address issue where issue was raised below, fully briefed on appeal, and not contingent on resolution of disputed facts); Cardiff v. Ellinwood, 2007 VT 88, ¶ 12, 182 Vt. 602, 938 A.2d 1226 (mem.) (exercising discretion to address issue "in the interests of judicial economy").

## A. Pouech v. Pouech

¶ 25. Critical to our analysis is the impact of our decision in Pouech, 2006 VT 40. Considering this decision, as well as other applicable authority, we conclude that the parties' agreement may be enforceable; that the civil division has jurisdiction to adjudicate an action regarding the enforceability of the agreement; and that in evaluating the enforceability of the contract, the trial court should consider whether it is fair and equitable.

¶ 26. Both parties' arguments, and the family division's analysis, turn on the impact of our decision in Pouech. In that case, a husband and wife filed with the court a signed stipulation for a temporary and final order and decree of divorce. Several months later, before the final divorce hearing, an attorney entered an appearance on behalf of the wife and filed a motion to amend the complaint to allow the wife to seek spousal maintenance. The family division denied the motion to amend on the basis that the parties intended their stipulation to be a final, complete resolution of their divorce and the stipulation did not mention spousal maintenance. Instead, family division incorporated the parties' stipulation into a final divorce order. On appeal, the wife argued that the family court was obligated to determine whether the parties' stipulation was fair and equitable before incorporating it into its final divorce order.

¶ 27. In reviewing our case law regarding the trial court's responsibilities when a party seeks to repudiate a stipulated agreement before the final hearing, we acknowledged that this Court

10

had sent mixed messages. Id. ¶ 16. In some cases, we stated that settlement agreements did not bind the court, which had discretion to dispose of marital property based on the evidence; in others, we held that a pretrial agreement to distribute property is a contract, which a court can set aside only on grounds sufficient to set aside a contract. Id. In developing a single standard to guide Vermont courts going forward, we noted that agreements reached by the parties are preferable to those imposed by a stranger to the marriage—namely, the court—but also recognized that the family division was statutorily authorized to decree a "just and equitable" division of property. Id. ¶ 17.

¶ 28. We concluded that when one or both parties object to a previous agreement made in anticipation of divorce before a final hearing, "the policy considerations that favor deference to the parties' 'voluntary' agreement are less forceful," and the policy considerations recognizing the family division's role in resolving disputes in contested divorce proceedings are greater. Id. ¶ 21. In that situation, the court may reject the stipulation even if the challenging party does not show grounds sufficient to overturn a contract. Id. ¶ 22. The guiding consideration for the trial court is whether, considering all of the circumstances surrounding the execution of the stipulation, the agreement is fair and equitable viewed from the perspective of the standards and factors set forth in the divorce statutes. Id. ¶ 23.[4]

¶ 29. In establishing this framework overruling any prior, inconsistent decisions, we cited two primary policy considerations: the family division's "statutorily authorized role to . . . assure a fair and equitable dissolution of the state-sanctioned institution of marriage," and the fact that

---

[4] We also considered scenarios in which a party to a stipulation seeks to repudiate it after the final divorce hearing, and concluded that once the court has held a final hearing at which the parties submitted a stipulation to the court for inclusion in the final order, "considerations of judicial economy favor requiring a party who wishes to challenge the stipulation before issuance of the final judgment to establish grounds sufficient to overturn a contract." Pouech, 2006 VT 40, ¶ 20. Once a stipulation is incorporated into a final order, the stipulation and associated order may only be challenged on grounds sufficient to overturn a judgment. Id.

11

marital settlement agreements "are often made under trying and emotional circumstances." Id. ¶ 24. See also Lourie v. Lourie, 2016 VT 57, ¶ 16, 202 Vt. 143, 147 A.3d 1015 (concluding that Pouech holding requiring family division to assess fairness of agreement in anticipation of divorce under relevant statutory criteria applied to enforceability of stipulated agreement both prospectively and retroactively).

B.  Enforceability of Postnuptial Agreements Outside of Divorce Action

¶ 30.  Nothing in the Pouech decision casts doubt on the long-recognized proposition clearly stated in Ladd that a postnuptial contract incident to separation by married partners may be enforceable outside of a divorce action if the agreement reflects the parties' mutual intent to be bound by the agreement wholly independent of the divorce action. The Pouech decision addresses only the authority of the family division to incorporate a subsequently contested stipulation into a final divorce order. There is nothing in the recitation of facts in Pouech that suggests that the parties' stipulated agreement contained terms indicating that the parties intended to be bound by their agreement independent of their divorce proceeding, and nothing in the analysis in Pouech that purports to address the enforceability of a postnuptial agreement outside of the context of a divorce proceeding—whether because the parties never enter into a divorce proceeding, or because the divorce proceeding abates by death.

¶ 31.  Moreover, the logic of Pouech is tied first and foremost to the family division's statutory authority and responsibility to divide marital property equitably in the context of a divorce action—a rationale that does not purport to impact the enforceability of a postnuptial contract incident to separation outside of the context of a divorce action in the family division. See 15 V.S.A. § 751(a).

¶ 32.  Though Pouech identified and expressly overruled precedents inconsistent with the Pouech Court's approach to incorporating stipulated agreements into the family division's property distribution when one or both parties seeks to repudiate the agreement, it did not purport to overrule

12

any decisions reaffirming the enforceability of postnuptial contracts between married parties. In particular, it did not overrule our holding in <u>Ladd</u> that a stipulated settlement agreement by which the parties intend to be bound independent of a divorce action may be enforceable even if the divorce action abates. 161 Vt. at 276-77, 640 A.2d at 33. Nor did it overrule our holding in <u>In re Prudenzano's Will</u>, in which we held outside of the context of any divorce action that postnuptial contracts to separate property are "legal if the bargain is fair and equitable in view of the circumstances of the parties." 116 Vt. 55, 58, 68 A.2d 704, 707 (1949).

¶ 33. Wife's suggestion that <u>Pouech</u> and <u>Ladd</u> together stand for the proposition that postnuptial agreements incident to marital separation are only enforceable if the family division has reviewed them to ensure that they are fair and equitable is incompatible with the reasoning of both cases. Wife emphasizes that in <u>Ladd</u>, because the husband died during the nisi period, the family division had reviewed and approved the parties' stipulated agreement before husband died. She argues that our holding in <u>Ladd</u>, that the parties' agreement was not terminated by the husband's death, was limited to the scenario in which a party dies during the nisi period, after family division review of the stipulation. But nothing in our reasoning in <u>Ladd</u> suggests that the fact that the family division had reviewed the stipulation and incorporated it into a final order before the husband died was in any way germane to our analysis. In fact, we recognized in that case that husband's death abated the divorce and rendered the order determining the parties' respective property rights ineffective. <u>Ladd</u>, 161 Vt. at 272-73, 640 A.2d at 30-31. The point of <u>Ladd</u> was that, based on its terms, the parties' stipulated agreement was not only a stipulation that they sought to include in a court order, but was an independent agreement enforceable without regard to the involvement of the family division or completion of a divorce. Likewise, as noted above, nothing in the <u>Pouech</u> decision suggested that family division review is a prerequisite to enforcement of <u>any</u> contested agreements between married parties; the analysis and holding of that

case focus only on family division review of stipulations to be incorporated into orders of the family division.

¶ 34. For these reasons, we conclude that the parties' agreement in this case may be enforceable outside of a divorce action and outside of the family division without review by the family division to determine whether the agreement is fair and equitable.

### C. Enforcement in the Civil Division

¶ 35. The civil division is a court of general jurisdiction. See 4 V.S.A. § 31; Quinlan v. Five-Town Health All., Inc., 2018 VT 53, ¶ 27, 207 Vt. 503, 192 A.3d 390. As such, we presume that the civil division has "jurisdiction over all civil actions unless the Legislature has clearly indicated to the contrary." Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 7, 182 Vt. 282, 938 A.2d 1215. For the reasons set forth above, the family division does not have jurisdiction to adjudicate an action to enforce a contract between the parties that is untethered to a divorce action or some other action within the family division's jurisdiction. And we see no other statutory provision that would divest the civil division of its jurisdiction to entertain a breach of contract claim in this case.

¶ 36. The special administrator seeks enforcement of the parties' agreement, essentially arguing that the agreement was executed during husband's lifetime by his guardian on his behalf, and the parties intended to be bound by it independent of any divorce action. Consistent with the civil division's role as the court of general civil jurisdiction, such suits by executors or administrators of an estate to enforce a contract of the decedent are typically brought in the civil division of the superior court. See, e.g., Baldauf v. Vt. State Treasurer, 2021 VT 29, __ Vt. __, 255 A.3d 731 (involving suit filed in civil division by wife as administrator of deceased husband's estate alleging breach of contract); Estate of Kuhling v. Glaze, 2018 VT 75, 208 Vt. 273, 196 A.3d 1125 (involving suit filed in civil division by estate against decedent's surviving niece for breach of contract); Benson v. MVP Health Plan, Inc., 2009 VT 57, 186 Vt. 97, 978 A.2d 33 (involving

14

suit filed in civil division by administrator of estate alleging breach of contract against health insurer).

¶ 37.    Accordingly, the special administrator may seek to enforce the parties' agreement in the civil division of the superior court.[5]

### D.  Applicable Standards

¶ 38.    In reviewing an action to enforce the parties' agreement as a freestanding contract, the reviewing court must determine first and foremost whether the parties intended to be bound by the agreement even in the absence of a divorce action.   In evaluating the agreement's enforceability, the trial court should ensure that the agreement is fair and equitable.

¶ 39.    Our decision in Ladd made clear that a marital settlement agreement executed in contemplation of divorce is only enforceable independent of a divorce action if it reflects the parties' mutual intent to be bound upon execution of the agreement, and without regard to whether the divorce action abates.  161 Vt. at 275, 640 A.2d at 32 (explaining that "the critical inquiry" is whether parties intended the agreement to take effect upon execution, or only upon entry of final judgment).  It identified a number of factors to be considered in making this determination.  Id. The factfinder's first step in evaluating an action to enforce the parties' agreement independent of the divorce action should be to determine whether they intended the agreement to apply in that context.

¶ 40.    If the trial court concludes that the parties intended the agreement to be enforceable as a contract independent of the divorce action, it should determine whether the agreement is fair

---

[5] We recognize that the validity and enforceability of the parties' agreement could become an issue in the context of litigation in the probate division concerning wife's elective share, and any claimed waiver thereof.  Under 14 V.S.A. § 323, the probate division has jurisdiction to determine the validity of a written waiver of a spouse's elective share.  See also V.R.P.P. 13 (allowing probate court to hold hearing to determine validity of request to take spousal share); 4 V.S.A. § 35 (listing matters within probate division jurisdiction).  The central issue in this context might overlap with the issues in a breach of contract claim, but the scope of the probate division's authority relative to enforcing the agreement as a whole would be narrower.

15

under the circumstances when evaluating the enforceability of the agreement. This requirement flows directly from common-law contract principles applicable to separation agreements.[6] Vermont law has long recognized that postnuptial contracts to separate property are "legal if the bargain is fair and equitable in view of the circumstances of the parties." Prudenzano's Will, 116 Vt. at 58, 68 A.2d at 707. In Prudenzano's Will, married parties executed a separation agreement settling all property rights and financial issues between them. Thereafter, the parties lived separate and apart. When the wife died, her will left everything she owned to people other than her husband. Based on the parties' separation agreement, the probate court denied husband's effort to elect against the will and claim his spousal share of the estate. On appeal, the Court affirmed the enforceability of such agreements, provided they are fair. Id. The Court explained:

> The great weight of modern authority, both cases and texts, supports the view that a bargain between husband and wife, made after separation, or in contemplation of an immediate separation which takes place as contemplated, whereby the husband contracts to release his interest in the property which his wife shall own on her death is legal if the bargain is fair and equitable in view of the circumstances of the parties.

Id. Although the Court concluded that the chancery court, rather than the probate court, was the proper forum for enforcing the parties' agreement, the Court concluded that because there was no claim that the contract was "unfair or inequitable in its provisions, and, in the absence of a showing to the contrary, it [was] presumptively fair." Id.

¶ 41. The Court relied on a host of sources to support this conclusion, including the Restatement (First) of Contracts, which provides that:

> A bargain between . . . persons who are married . . . made after separation or in contemplation of an immediate separation which takes place as contemplated, for a division of assets or for future maintenance or alimony, is legal if the bargain is a fair one in view of the circumstances of the parties.

---

[6] These principles may have informed our analysis in Pouech, but the requirement that the court evaluate the fairness of the parties' agreement long predates our Pouech decision and does not derive in any way from Pouech.

Restatement (First) of Contracts § 584 (1932). The Restatement (Second) of Contracts likewise restates this common-law rule:

> A separation agreement is unenforceable on grounds of public policy unless it is made after separation or in contemplation of an immediate separation and is fair in the circumstances.

Restatement (Second) of Contracts § 190 (1981). See also R. Lord, 5 Williston on Contracts § 11:7 (4th ed. 2021) ("[P]roperty settlements or other postnuptial agreements, whether in contemplation of divorce or otherwise, are generally held to be binding when they are shown to be fair and regular and not unconscionable or the product of fraud, duress, mistake or undue influence."). This common-law rule recognizes the freedom of separating spouses to contract, while accommodating the unique circumstances of a contract between separating spouses.

¶ 42. We are mindful that we said nothing about a "fair and equitable" test in Ladd, but there is no indication that either party in that case challenged the fairness of the agreement rather than its binding effect upon abatement of the divorce. We do not read Ladd to overrule the common law rule set forth above.

Affirmed.

FOR THE COURT:

_____

Associate Justice

17