MARY E. CHIMINIELLO *vs.* PETER J. CHIMINIELLO
(and a companion case).

Suffolk.  November 21, 1979. — December 14, 1979.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Jurisdiction,* Divorce. *Divorce,* Foreign divorce, Tenancy by the entirety. *Probate Court,* Partition. *Real Property,* Partition.

In a proceeding in the Probate Court, there was sufficient evidence to warrant a conclusion that a Nevada divorce obtained by the husband was valid and that, therefore, a tenancy by the entirety held by the parties had become a tenancy in common and the husband's obligation to make separate support payments was terminated. [807-808]

PETITIONS filed in the Probate Court for the county of Norfolk on August 14, 1973, and October 17, 1973, respectively.

The cases were heard by *Sullivan,* J.

*Nathaniel M. Sherman* for the plaintiff.

*George G. Burke* for the defendant.

KASS, J.  On August 14, 1973, Peter J. Chiminiello petitioned the Probate Court that partition be made of land located partly in Quincy and partly in Braintree which, he alleged, he owned together with Mary E. Chiminiello as tenants in common.  Two months later, on October 17, 1973, Mary brought a contempt proceeding against Peter on the ground that he was delinquent in obligations to make separate support payments imposed by a separate support order originally entered December 21, 1945 (shortly after Mary and Peter first lived apart from each other), and last amended June 29, 1955.

The resolution of both proceedings turns on whether the Chiminiellos had been divorced in Reno, Nevada, in

1959, fourteen years after they separated, and the Probate Court referred an inquiry into the circumstances of that divorce to a master.

The master's subsidiary findings, to which Mary did not serve written objections, Mass.R.Dom.Rel.P. 53(e)(2) (1975), were that: Peter went to Reno in July, 1959; intended to remain there indefinitely; established a residence and obtained employment in Reno; obtained a decree of divorce from Mary on October 9, 1959; remarried; and lived in Nevada for approximately six months thereafter (his entire sojourn in Nevada was nine months). Those findings were consistent with the master's further finding that Peter was domiciled in Nevada when he obtained a divorce from Mary in a Nevada court. The master also found that Mary had been served with notice of the Nevada proceeding, but did not appear.

These findings warranted a conclusion that the elements of jurisdiction had been established, and that the Nevada divorce was entitled to full faith and credit. *Williams* v. *North Carolina,* 317 U.S. 287, 299 (1942). *Coe* v. *Coe,* 334 U.S. 378, 383-384 (1948). *Heard* v. *Heard,* 323 Mass. 357, 364-365 (1948). *Shain* v. *Shain,* 324 Mass. 603, 607 (1949), cert. denied, 338 U.S. 954 (1950). Compare *Rubinstein* v. *Rubinstein,* 319 Mass. 568, 569-575 (1946); *Barnard* v. *Barnard,* 331 Mass. 455 (1954). By reason of the divorce, the tenancy by the entirety held by Mary and Peter in the real estate in Quincy and Braintree (which had been their marital domicile until they separated) became a tenancy in common. *Childs* v. *Childs,* 293 Mass. 67, 71 (1935). The Nevada divorce also terminated Peter's obligation to make separate support payments since separate support "is dependent on the existence of the marriage relation." *Rosa* v. *Rosa,* 296 Mass. 271, 272 (1936). Termination of the marriage relation "by a divorce decreed in another jurisdiction, valid and effectual in this Commonwealth, entitles the husband to be discharged from his liability for pay-

ments, under the decree for separate support, which had not become due at the time of the divorce." *Id.*

Although the probate judge purported to enter a judgment in the partition case, that proceeding did not result in any order to commissioners pursuant to G. L. c. 241, § 31. Rather the judgment simply concluded that Peter was to "have the right to proceed with his petition for partition." In that form the "judgment" was no more than an interlocutory order. Although we have answered the questions put by the parties, who proceeded on the understanding that their case had gone to judgment, in the present status of the case, the appeal must be dismissed. *Harrow* v. *Board of Appeals of Pittsfield,* 7 Mass. App. Ct. 937 (1979). It is the duty of the probate judge to fashion a decree in the manner provided in G. L. c. 241, § 10, the text to which is set forth in the margin.[1] Such a decree, although denominated "interlocutory" by the statute, is final by its nature. *Asker* v. *Asker, ante* 634, 637 (1979).

In connection with those proceedings Mary may make claim for relief in accordance with G. L. c. 241, §§ 23 and 25, to the extent that her expenditures with respect to the property for taxes, maintenance, and improvements have exceeded its fair rental value from 1945 to 1959, and one-half its fair value since 1959.

*Appeal dismissed.*

---

[1] "If it is found that the petitioner is entitled to have partition for the share claimed or for any less share, the court shall make the interlocutory decree that partition be made, and therein determine the persons to whom and the proportions in which the shares shall be set off. The petition shall not be defeated by the payment by a party of a mortgage, lien, tax or other encumbrance upon the land, if the other parties are entitled to redeem from such payment; but the interlocutory decree shall contain such terms and conditions relative to redemption by a contribution on account of any such payment as the court may deem equitable."