HOMER F. STYLIANOPOULOS vs. ANNA M. STYLIANOPOULOS
(and a companion case[1]).

Essex. September 15, 1983. — November 2, 1983.

Present: HALE, C.J., PERRETTA, & KASS, JJ.

*Probate Court,* Partition. *Real Property,* Partition. *Divorce and Separation,* Division of property.

Where a divorce decree had become final before the effective date of
St. 1974, c. 565, amending G. L. c. 208, § 34, to provide for an equitable division of property incident to a divorce, a probate judge had no
authority to act on a complaint brought by the former wife seeking an
equitable distribution of property. [65]
A divorce may be considered an ouster of the spouse who moves out of the
former marital home in determining whether the spouse occupying the
home should account for fair rental value upon partition of the property. [66-69]
Discussion of factors which may be considered by a judge in allocating the
proceeds of the sale on partition of a former marital home, which had
been occupied by one of the parties following a divorce. [69-70]
In a proceeding brought by a husband seeking partition under G. L. c. 241
of the former marital home, which had been occupied by the wife following the divorce, there was no evidence to support the judge's findings that a portion of the child support payments made by the husband
was used for mortgage, tax and insurance payments on the home, and
that the average fair rental value of the home was $300 a month.
[70-71]

PETITION for partition filed in the Essex Division of the
Probate and Family Court Department on January 2, 1980.
LIBEL for divorce filed in the Probate Court for the county of Essex on January 10, 1967.
A complaint for alimony and equitable division of property, filed on December 7, 1981, was consolidated with

---

[1] Anna M. Stylianopoulos vs. Homer F. Stylianopoulos.

the petition for partition, and the matters were heard by *Rockett*, J.

*David L. McLellan*, for Anna M. Stylianopoulos, submitted a brief.

KASS, J.   Eleven years after they were divorced, Homer F. Stylianopoulos filed a petition in a Probate Court under G. L. c. 241, § 6, for partition and sale of the former marital home in Haverhill.   In what appears to be a backfire action, his former wife, Anna, brought a complaint for equitable distribution of property under G. L. c. 208, § 34.

In each action, a Probate Court judge entered a judgment[2] requiring that the Haverhill property be sold and the net proceeds divided equally between Anna and Homer. At the time, June 30, 1982, he formulated his order under G. L. c. 208, § 34, the judge did not have the benefit of *Hay* v. *Cloutier*, 389 Mass. 248 (1983), in which it was decided that the division of assets provisions of § 34 were not to be applied retroactively, i.e., not to divorce judgments which became absolute prior to October 17, 1974, the date upon which St. 1974, c. 565, became effective. That act inserted the equitable division of assets provision in § 34.   *Id.* at 252-254.   As the Stylianopoulos divorce had become final in 1968, the Probate Court lacked power to act on Anna's § 34 complaint.   In that action, therefore, the judgment is to be reversed and the complaint dismissed.

We turn to the parallel proceeding, the petition for partition, which led to the same pecuniary result.   There was agreement between the parties that the property at the time of trial had a fair market value of $45,900 and was subject to a mortgage of $4,037.27.   In addition, the judge found as follows:   Both parties contributed toward mortgage debt service, taxes, and insurance until they separated in 1966. Thereafter, Anna carried the financial responsibility for

---

[2] Although G. L. c. 241, § 10, speaks of a "decree" in partition proceedings, it was noted in *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 639 n.5 (1979), that partition cases appear to be recognized as equity proceedings, and, thus, are subject to the Massachusetts Rules of Civil Procedure. Therefore, "judgment" is correct nomenclature.   See also *Young* v. *Paquette*, 336 Mass. 673, 674-675 (1958).

the property. From the time the divorce became final on October 9, 1968, until trial, Anna's expenditures in this regard were about $25,480. She made capital improvements which cost her $2,336. The principal reason for the property's increase in market value was a general increase in price levels. The average rental value of the house during the thirteen years and two months in question was $300 per month. By treating her occupancy of the property as a benefit received, the judge appears to have calculated that half the assumed fair rental value, $23,700 ($300 x 12 x 13 1/6 = $47,400 ÷ 2 = $23,700) was roughly equal to the $27,816 Anna had paid in ($25,480 + 2,336 = $27,816), and that a fifty-fifty split of the net proceeds of sale was equitable.[3]

1. *Occupancy as a "Benefit."*

At the core of Anna's attack upon the partition judgment is an assertion that she should not have been charged with half the fair rental value of her personal occupancy of the property as a benefit received by her within the meaning of G. L. c. 241, the statute which governs partition,[4] because she did not bar Homer from using the premises, i.e., there was no ouster. Anna is quite correct in asserting the position that in an accounting for the proceeds of sale pursuant to partition, no recognition is to be given fair rental value unless the occupying tenant has agreed to pay rent or has

---

[3] These figures vary by two dollars from the precise figures found by the judge. The judge writes in his findings that Anna is entitled to reimbursement for only one-half of her expenditures, but in the end he appears to have credited her with all of them.

[4] Petitions for partition are comprehensively governed by c. 241, and that statutory scheme is "apparently designed to embrace the whole subject," superseding previous provisions of the statutory and common law. *O'Connor* v. *Boyden,* 268 Mass. 111, 114-115 (1929). Were it not for the statute, no accounting at all would be due for use and occupation unless there was an agreement by the tenant in occupation to pay a use and occupation charge. See *Moseley* v. *Moseley,* 240 Mass. 22, 26 (1921). With exceptions not here pertinent, the relevant provisions of c. 241 are those of St. 1917, c. 279, §§ 1 through 39, which followed a "Report of the Special Commission to Revise and Codify the Laws Relative to Partitions of Real Estate and Allied Matters." 1917 House Doc. No. 1638.

ousted the other tenant or tenants in common from the property in question. *Giuggio* v. *Paoli*, 244 Mass. 279, 280-281 (1923). *Howland* v. *Stowe*, 290 Mass. 142, 145 (1935). *Goff* v. *MacDonald*, 333 Mass. 146, 152 (1955). See also 4A Powell, Real Property, par. 604, at 617 (1982). But see Restatement, Restitution § 125(2), comment *b* (1937): "It is not within the scope of the Restatement of this Subject to deal with the rights of a tenant in common who utilizes more than his share of the property, nor of one who utilizes a part of the common property while the other does not so utilize it." See generally, Annot., 51 A.L.R. 2d 388, 409-445 (1957). Adjustment of rents and profits received from third persons is not, under these authorities, subject to the ouster requirement.

There is implicit in *Chiminiello* v. *Chiminiello*, 8 Mass. App. Ct. 806, 808 (1979), however, the thought that a divorce presumes the ouster of the spouse who moves out of the former marital residence. The presumption is a rebuttable one, but it is at least an improbable supposition that a divorced person who remains in the marital home would tolerate the continued residence under the same roof of the former spouse. Feelings which attend divorce are usually more intense than all that. See *Adkins* v. *Edwards*, 317 So.2d 770 (Fla. App. 1975), in which the court, dealing with the partition of a marital home, observed, "In cases like this there frequently exists an aura of hostility and awkwardness not necessarily common to cotenancy of lands or other properties held for commercial purposes. While neither of the parties contended that he or she was ousted from possession, it is unrealistic to believe that parties who could not get along living together while they were married would be expected to enjoy common usage of the former marital home after their divorce." *Id.* at 771. Contrast *Kahnovsky* v. *Kahnovsky*, 67 R.I. 208, 211-213 (1941) (wife justified in leaving marital home but this was not an ouster for partition purposes).

Anna contends she should also receive credit for repairs as improvements. Section 23 of c. 241 speaks of "buildings or . . .

other permanent improvements on the common land," i.e., work of a capital, rather than a maintenance, nature. Nothing in *Backus* v. *Chapman*, 111 Mass. 386, 388 (1873), or in *Sunter* v. *Sunter*, 198 Mass. 137, 141 (1908), to which Anna has cited, persuades us to the contrary. Her repair obligations, as we shall see below, however, may diminish what she should be charged as fair rent.

Accordingly, *Chiminiello*, on the facts of that case, suggested that the divorced former wife might claim relief under G. L. c. 241, §§ 23 and 25, "to the extent that her expenditures with respect to the property for taxes, maintenance, and improvements have exceeded . . . one-half its fair [rental] value." 8 Mass. App. Ct. at 808. In the instant case the judge found that Homer "voluntarily left the marital home." We take this to mean that as between himself and his wife, Homer recognized the realities of the situation and ceded occupancy to Anna and their then minor children. That "voluntary" departure would not be inconsistent with a conclusion that Anna, as a practical matter, barred her cotenant in common (such Homer became upon their divorce, see *Campagna* v. *Campagna*, 337 Mass. 599, 605 [1958]), from the former marital home. It was open to the judge so to assess Homer's status as to the property, i.e., that Homer was ousted, though such an assessment is not compelled in all cases and will depend on the facts. We need not decide on this record whether a party "ousted" in such circumstances is barred by laches from charging an occupying tenant with fair rental value if the claim is too long deferred. In the instant case, Homer, the nonoccupying party, brought his petition within a reasonable time after the youngest of the Stylianopoulos children reached the age of majority. There was also a finding by the judge that the parties had on two occasions after their divorce "agreed to put the former marital home up for sale but have failed to sell it on both occasions."

If the judge concluded that an ouster had occurred, it was further open to him to charge Anna with one-half the fair rental value of the premises. The power so to do is discre-

tionary under G. L. c. 241, § 23, which provides that "the court, *may* deduct" (emphasis supplied) benefits received from credits for the value of permanent improvements made by the occupying tenant, to the extent those improvements increased the value of the property. See *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 639 (1979). It is similarly discretionary if exercised under G. L. c. 241, § 25, which confers general equity powers upon the Probate Court in connection with partitions, including the power "to hear and determine all matters of accounting between the parties in reference to the common land." See *Moseley* v. *Moseley*, 240 Mass. 22, 25 (1921); *O'Connor* v. *Boyden*, 268 Mass. 111, 115 (1929). In that connection the task of the court is to make the portions just and equal, i.e., just and equitable. G. L. c. 241, §§ 14, 15 and 31. *Batchelder* v. *Munroe*, 335 Mass. 216, 218 (1957). For how much, if any, of fair rental value an occupying spouse should account may depend on whether the divorce judgment appears to provide that the occupying spouse is to occupy the former marital home free of charge.

2. *The Nature of the Accounting.*

At first blush it might seem that fair rental value or any other benefits received are factors in partition cases only as an offset against permanent improvements to the common estate by the occupying tenant. This is because G. L. c. 241, § 23, deals expressly with that subject. No case, however, imposes such a limitation and *Batchelder* v. *Munroe*, 335 Mass. at 219, combines improvements and other matters as items in the accounting. Indeed, assuming a case in which the occupying tenant barred a cotenant from the common estate at the point of a gun, it would be anomalous to say that the occupying tenant had no obligation to account to the wronged tenant for benefits received from the common property (e.g., oil) unless the occupying tenant had improved the property.

No provision in c. 241 deals explicitly with how taxes, mortgage debt service, and insurance shall be accounted for. Such costs, however, are incurred to preserve the com-

mon estate and it would be a windfall to the noncontribut-
ing tenant if, upon partition, the paying tenant and the
noncontributing tenant were not obliged to account so that
each tenant in common bears his proportional share of the
costs. This was the view taken in *Batchelder* v. *Munroe*,
335 Mass. at 219, and in *Chiminiello* v. *Chiminiello*, 8
Mass. App. Ct. at 808.[5]

3. *Challenged Findings of Fact.*

Anna challenges several findings of fact made by the
judge. We, of course, accept those findings of fact unless
clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816
(1974).

We find no evidence in the record to support the judge's
finding that "a portion of the [forty dollars per week] child
support payment (possibly 30-40%)" was used to pay the
mortgage debt service, taxes, and insurance, unless the
judge deduced this from the fact of the residence in a part of
the house by the Stylianopoulos children, i.e., that about
one-third of the support payments would be allocable to
shelter, a proposition we regard as untenable. Upon re-
mand, the judge may receive evidence about Homer's direct
contribution, if any, to mortgage debt service, taxes, and in-
surance and in what amount this is to be accounted for.

There was also no evidence to support the finding of an
average fair rental value of the home of $300 per month.
The only figures on this subject appeared in Homer's request
for findings, which of course are not evidence. Upon re-
mand, the judge, in receiving evidence of rental value, if
any is proffered, may consider whether the rental value
takes into account the obligation assumed by Anna to make
all repairs to the property.

As to Anna's objection to the judge's findings on the date
of final separation between Anna and Homer, the date the

---

[5] Anna did not file an answer demanding an accounting to Homer's
petition for partition. The better procedure is to do so. See *Asker* v.
*Asker*, 8 Mass. App. Ct. 634, 637 (1979). Homer's petition, however, im-
plicitly requires an accounting in that it prays for a division of sale pro-
ceeds which is just and equal. See G. L. c. 241, § 31.

kitchen was remodelled, and the effect to be given to her payments on an aluminum siding loan, there was evidence to warrant the findings made. As to the effect of inflation on the market value of the house, the judge's finding, to the degree unsupported, was immaterial.

When the consolidated cases were tried and decided, the judge, acting before *Hay* v. *Cloutier*, *supra*, relied largely on the equitable division machinery of G. L. c. 208, § 34, and appears, sensibly, to have brought the partition proceeding in parallel position. The partition is now the only object of the contest.

The partition judgment (Essex Probate No. 347436) is reversed. Although, ordinarily, Homer's failure to furnish evidence to support the findings concerning his contributions and the fair rental value of Anna's occupancy would foreclose him from repairing this insufficiency on remand, the degree to which § 34 equitable division of assets considerations dominated the proceedings inclines us to permit those issues to be reexamined on the remand which is required in any event. The case is remanded to the Probate Court for further proceedings concerning Homer's contribution, if any, to mortgage debt service, taxes, and insurance; the fair rental value to be ascribed to Anna's occupancy; and to establish the basis for an accounting in accordance with the principles set forth in this opinion. The Probate Court shall make an interlocutory decree in accordance with G. L. c. 241, § 10, and, thereupon, the court in accordance with G. L. c. 241, § 12, shall appoint one or more disinterested commissioners and issue a warrant to them to make partition. See *Platts* v. *Wronski*, 15 Mass. App. Ct. 30, 33 (1982). We do not mean to preclude the judge's permitting the parties to make a sale of their own volition and accounting to each other in accordance with the judge's direction should they choose that course to avoid the expense incident to paying the commissioners. A judgment is to enter directing how the net proceeds of sale shall be allocated between the parties.

As to the proceeding brought under G. L. c. 208, § 34 (Essex Probate No. 34690), the judgment is reversed, and a new judgment is to enter dismissing the complaint.

Neither party shall have costs of the appeal.

*So ordered.*