FURNAS vs. CIRONE, 102 Mass. App. Ct. 97

 
 JANE K. FURNAS vs. CATHLEEN M. CIRONE, personal representative. [Note 1]

102 Mass. App. Ct. 97
 October 14, 2022 - January 9, 2023

Court Below: Probate and Family Court, Hampden Division
Present: Wolohojian, Blake, & Desmond, JJ.

 

No. 22-P-257.

Joint Tenants. Real Property, Joint tenancy, Partition. Contempt. Practice, Civil, Contempt, Standing, Death of party, Counterclaim and cross-claim, Motion to dismiss.

A decree partitioning real property owned by joint tenants with rights of survivorship severed the joint tenancy, where the unities of possession and interest were destroyed by the decree, in that, by the terms of the decree, the joint tenants no longer had equal use and possession of the property and their interests were not identical [100-102]; and where the decree was a final declaration of the rights and obligations of the parties that completed the partition [102-104].

In a civil action seeking partition of real property owned by joint tenants with rights of survivorship, a partition decree into which the parties' negotiated agreement was incorporated and merged was not extinguished by the subsequent death of one of the joint tenants and remained enforceable, where the joint tenants had reached the agreement, which permissibly altered the common-law survivorship rights of their joint tenancy, and agreed to merge the agreement into the decree; and where such a civil judgment is enforceable against a decedent's estate if the decedent dies after entry of the judgment. [104-105]

A personal representative of a decedent's estate had standing to file a complaint for contempt, on behalf of the estate, seeking to enforce a decree that had partitioned real property held by the decedent and another as joint tenants [106]; further, a Probate and Family Court judge did not abuse her discretion in determining that the personal representative met her burden to prove, by clear and convincing evidence, that the other joint tenant willfully disobeyed a clear and unequivocal command [106]; however, this court vacated a portion of the judgment deciding a purported counterclaim for contempt on the merits, where the other joint tenant was not afforded appropriate notice or an opportunity to be heard in connection with her counterclaim [106-107].

Petition for partition filed in the Hampden Division of the Probate and Family Court Department on December 20, 2016.

 Page 98 

 A motion to dismiss a complaint for contempt, which had been filed on January 22, 2021, was heard by Barbara M. Hyland, J., and the complaint for contempt was also heard by her.

Talia K. Landry for the petitioner.

Mark J. Esposito for the respondent.

 BLAKE, J. Anthony P. Cirone (Anthony) and Jane K. Furnas (Jane) owned real property as joint tenants with rights of survivorship. In December 2016, Jane filed a petition to partition the property in the Probate and Family Court. The parties reached a negotiated agreement to resolve all the issues in the partition petition. That agreement was incorporated and merged into a decree. Nearly two years later, on June 4, 2020, Anthony died. Cathleen M. Cirone (Cathleen), as the personal representative of Anthony's estate, filed a complaint for contempt. Cathleen alleged that the decree was enforceable and that therefore Jane was in contempt because she failed to comply with its terms. Jane filed an answer contending that Anthony's death did not sever the joint tenancy, that the agreement was unenforceable, and that all right, title, and interest in the property vested in her on Anthony's death. Jane filed a motion to dismiss the complaint, contending that Cathleen lacked standing. The judge denied the motion and found Jane guilty of civil contempt. This appeal followed.

 We conclude that the decree is enforceable and that it severed the joint tenancy. Accordingly, with one exception, we affirm the contempt judgment, albeit on different grounds from those of the Probate and Family Court judge. See Neuwirth v. Neuwirth, 85 Mass. App. Ct. 248, 260-261 (2014).

 Background. Anthony and Jane owned a home in East Longmeadow as joint tenants. In December 2016, Jane filed a petition to partition the property. On August 9, 2018, a judge of the Probate and Family Court approved Anthony and Jane's negotiated agreement; the agreement was incorporated and merged into the decree. [Note 2] Thereafter, and pursuant to the terms of the agreement, Anthony made seven payments to Jane. Prior to 

 Page 99 

Anthony's death, Cathleen was appointed his conservator. In this capacity, Cathleen made twelve payments to Jane from February 2019 to March 2020, but made no payments between March and September 2020. Cathleen attempted to get a forbearance on the mortgage but was unable to do so because Jane was the payor on the mortgage. On June 4, 2020, Anthony died. [Note 3] In September 2020, Cathleen, as the personal representative of Anthony's estate, brought the payments to Jane current; Jane did not deposit the checks because she claimed that upon Anthony's death, she became the sole owner of the property as the surviving joint tenant. 

 Thereafter, Cathleen filed a complaint for civil contempt wherein she alleged that Jane failed to comply with the terms of the decree. Jane filed an answer, setting forth affirmative defenses challenging the validity of the negotiated agreement and a purported counterclaim. [Note 4] Jane also filed a motion to dismiss the complaint, contending that the decree did not sever the joint tenancy and, therefore, Cathleen lacked standing to bring the complaint. The judge denied the motion to dismiss. She concluded that the decree destroyed the joint tenancy and that each party was entitled to the benefit of the negotiated agreement. The judge further concluded that because the decree was final, and not interlocutory, it resolved all issues relating to the parties' rights to the property, and that it "must be afforded the protection of finality afforded a decree entered after a hearing." Following an evidentiary hearing, the judge found Jane in civil contempt. [Note 5] 

 On appeal, Jane argues that the judge erred in (1) finding that the decree severed the parties' joint tenancy, (2) denying the 

 Page 100 

motion to dismiss, (3) finding that the agreement was valid and enforceable, and (4) issuing a decision on Jane's counterclaim for contempt. We vacate so much of the judgment as dismissed the counterclaim for contempt on the merits. In all other respects, we affirm the judgment. 

 Discussion. "We review the judge's ultimate finding . . . [on the complaint for] contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error" (citation omitted). Jones v. Jones, 101 Mass. App. Ct. 673, 688 (2022).

 1. Joint tenancy. "A joint tenancy is created under the instrument of purchase or devise under which the joint tenants take title." Battle v. Howard, 489 Mass. 480, 484 (2022). It is created by common law, and the right of survivorship comes from the application of common law, independent of statutes. See Weaver v. New Bedford, 335 Mass. 644, 646 (1957). The creation and maintenance of a joint tenancy depends on the existence of the unity of time, the unity of title, the unity of interest, and the unity of possession (four unities). See Battle, supra. Here, there is no dispute that Anthony and Jane initially held the property as joint tenants. We therefore turn to the question whether that joint tenancy was severed.

 2. Severance. a. The four unities. A joint tenancy exists provided the coowners of the property "have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession." Battle, 489 Mass. at 484, quoting 2 H.T. Tiffany, Real Property § 418, at 196 (1939). A joint tenancy is severed when any one of the four unities is destroyed. See Battle, supra; Weaver, 335 Mass. at 646. Here, the unities of time and title remained intact and are not at issue, because Anthony and Jane took title to the property under the same instrument and at the same time. Therefore, we focus our discussion on the unities of possession and interest. 

 Because there is a dearth of Massachusetts cases that define the unity of possession, we look to other States for guidance. Generally, the unity of possession is defined as the joint ownership of property such that both people own the whole property and have the right to use and enjoy the property as if sole owners. See, e.g., Ogilvie v. Idaho Bank & Trust Co., 99 Idaho 361, 367 (1978) ("The unity of possession essential to the existence of a joint tenancy means that each joint tenant is entitled to the use and 

 Page 101 

enjoyment of the whole property, as if a sole owner, subject to the other joint tenants' equal and undivided rights of possession"); Bankers Trust Co. v. Woodall, 2006-NMCA-129, ¶ 7 ("Unity of possession is merely each cotenant's right to possess the whole"). Here, by the terms of the decree, Anthony and Jane no longer had equal use and possession of the property. Anthony agreed to vacate the property and to remove all of his personal belongings by the end of the month following execution of the agreement. He did not simply move out; by the terms of their agreement, Anthony lost the right to possess the whole of the property. Contrast Goetz v. Slobey, 76 A.D.3d 954, 956 (N.Y. 2010) (commencing partition action and moving out of property did not sever unity of possession because parties had right to possess whole until final partition decree). Moreover, the decree also provided that Jane would retain the property and Anthony would have no further responsibility for the property (after Jane paid Anthony a sum certain). We therefore conclude that the unity of possession was destroyed by the decree.

 For the same reasons, we conclude that the unity of interest was also destroyed by the decree. Contrast Battle, 489 Mass. at 492-493 (unity of interest not destroyed when commissioner accepted buyer's offer because agreement was subject to approval by judge, and parties had right to object). To maintain the unity of interest, joint tenants must have identical interests both in the share of common property and in the duration of each tenant's interest. See Ex parte Arvest Bank, 219 So. 3d 620, 626 (Ala. 2016). Here, the decree altered the parties' interests in the property such that either Jane would become the sole owner (if she was able to refinance the mortgage on the property) or neither party would own any part of the property (if the property was sold). In either situation, the parties' interests in the property were not identical in either nature or duration, and therefore the unity of interest was destroyed. [Note 6]

 We also observe that there is a paucity of Massachusetts appellate cases that address severance of a joint tenancy within the context of the four unities. [Note 7] Many States have abandoned the four unities approach and instead look to the intent of the parties to 

 Page 102 

determine severance. In those circumstances, severance can be established "if the joint tenants agree, expressly or as implied from [their] conduct, to hold title as tenants in common." Moeckly v. Hanson, 2020 SD 45, ¶ 16. See Taylor v. Canterbury, 92 P.3d 961, 966 (Colo. 2004) (intent of parties, not four unities, determines severance); Matter of the Estate of Johnson, 739 N.W.2d 493, 498 (Iowa 2007) (intent-based approach more appropriate and realistic means to determine severance of joint tenancy); Nicholas v. Nicholas, 277 Kan. 171, 186 (2004) (recognizing modern trend of parties' intent as operative test of severance); In re Estate of Knickerbocker, 912 P.2d 969, 975 (Utah 1996) (intent of parties and not four unities governs determination of severance). 

 Here, the terms of the decree required Anthony and Jane to take action inapposite to the continuation of a joint tenancy, and thus it was severed. See Matter of the Estate of Johnson, 739 N.W.2d at 498-499 (intent of parties in conjunction with instrument effectuating intent was sufficient to find joint tenancy severed). See also Mann v. Bradley, 188 Colo. 392, 395 (1975) (separation agreement that provided for future sale of property and division of proceeds inconsistent with joint tenancy and signified intent of parties to hold property as tenants in common, thus severing joint tenancy). Similarly, here the terms of the decree are inconsistent with joint tenancy, notwithstanding that Anthony's name would not be removed from the title until Jane refinanced or sold the property. Id. 

 b. Partition. Even if the unities of possession and interest were not severed by the decree, it is well settled that a joint tenancy may be severed -- at the will of either party -- by partition. See Shaw v. Hearsey, 5 Mass. 521, 522 (1809). In that circumstance, a coowner of property has a statutory right to petition the court to divide property that he or she no longer wishes to own jointly with another. See Battle, 489 Mass. at 485. See also Mitchell v. Starbuck, 10 Mass. 5, 12 (1813). Here, the parties exercised that right, beginning with Jane filing a petition to partition pursuant to G. L. c. 241, § 1, and concluding with the parties' negotiated agreement that was incorporated and merged into the partition decree. That decree was a final determination of the individual rights of Anthony and Jane. [Note 8] Compare Minnehan v. Minnehan, 336 Mass. 668, 671 (1958) (mere institution of partition proceedings 

 Page 103 

does not sever joint tenancy), with Cowden v. Cutting, 339 Mass. 164, 170 (1959) (deed of commissioner in partition proceeding by sale is final determination of interests of common owners of property).

 The Supreme Judicial Court's holding in Battle is not to the contrary. There, pursuant to a temporary order, the judge appointed a commissioner to sell the property. Battle, 489 Mass. at 481-482. The commissioner accepted an offer to purchase the property and filed a motion for authority to enter into a purchase and sale agreement. Id. at 482. Prior to a hearing on the motion, one of the owners of the property died. Id. The court held that the joint tenancy was not severed because the course of the proceedings, up until the time of the final conveyance, could be altered by the owners of the property or the commissioner. Id. at 491. At that stage of the proceedings, the court held that there was an interim order, not a final determination on the merits. Id. By contrast, here the case was concluded, and a decree had entered. Nothing further was required of the coowners or the judge. Contrast id. (purchase and sale agreement was subject to approval by judge and to parties' rights to object, and parties were free to terminate partition action). Here, the decree was a final declaration of the rights and obligations of the parties, and there was nothing left to do to complete the partition. See Asker v. Asker, 8 Mass. App. Ct. 634, 637 (1979) (partition decree, once rendered, was conclusive determination of rights of all parties under petition, as no issue remained open concerning ownership, title, or individual shares or interests).

 To the extent that Jane contends that the decree did not contain all of the statutory requirements of partition under G. L. c. 241, § 10, that argument must fail. [Note 9] See Chiminiello v. Chiminiello, 8 Mass. App. Ct. 806, 808 (1979). Parties in a partition action can 

 Page 104 

agree to terms that are different from those set forth in the statute. See Nichols v. Nichols, 181 Mass. 490, 491-492 (1902) (objection to partition decree not sustainable where parties agreed and acquiesced to division of property, even though agreement did not follow statutory requirement). Moreover, Jane does not allege any harm or prejudice flowing from any difference between the terms and conditions upon which the parties agreed to partition the property, as they were incorporated into the decree, and the terms and conditions set forth in the statute, and we see none.

 We also note that Anthony and Jane were afforded additional benefits not available to them in a contested partition action. By reaching a negotiated agreement, Anthony and Jane saved the time and expense of the appointment of a commissioner; Jane was afforded considerable time to refinance the property, or if she was unable to do so, to sell the property; Anthony was to receive a negotiated lump sum payment from Jane; and they allocated the responsibility to make monthly mortgage payments until the property was refinanced or sold. Anthony and Jane did exactly what our courts encourage litigants to do -- they resolved their case by agreement and, in so doing, severed the joint tenancy. See White v. Laingor, 434 Mass. 64, 66 (2001) (courts encourage resolution of disputes by agreement of parties); Ratchford v. Ratchford, 397 Mass. 114, 116 (1986) (public policy favors settlement of property disputes through agreement); DeMarco v. DeMarco, 89 Mass. App. Ct. 618, 623 (2016) (courts encourage parties to enter agreements that secure with finality parties' rights and obligations).

 3. Enforceability of decree. Anthony and Jane negotiated the agreement that was incorporated into the final decree. It is axiomatic that courts have the power to enforce final judgments. See Sommer v. Maharaj, 451 Mass. 615, 621 (2008), cert. denied, 556 U.S. 1235 (2009). Jane claims that notwithstanding this principle, the decree is not enforceable because of Anthony's death. We are not persuaded.

 Generally, when a joint tenant dies, the decedent's interest passes to the surviving joint tenant. See Attorney Gen. v. Clark, 222 Mass. 291, 294 (1915). However, here, Anthony and Jane permissibly altered the common-law rules of ownership of real property by reaching an agreement -- that was incorporated into a decree -- on the disposition of their joint tenancy. See Finn v. Finn, 348 Mass. 443, 446 (1965) (separation agreement may preserve joint ownership of asset beyond divorce and avoid 

 Page 105 

common-law rule converting marital joint ownership to postdivorce tenancy in common). See also Waxman v. Waxman, 84 Mass. App. Ct. 314, 320 (2013) ("definitive ante mortem agreement" is necessary to override common-law rules regarding property rights). In the absence of an agreement, a joint tenancy remains intact. See Pavluvcik v. Sullivan, 22 Mass. App. Ct. 581, 583-584 (1986) (death of spouse before entry of final divorce judgment will leave intact right of survivorship in jointly held property unless parties take some action to alter result). However, Anthony and Jane did reach an agreement, which permissibly altered the common-law survivorship rights of their joint tenancy, and that agreement controls. See id. at 584-586 (upholding separation agreement after party's death that required partition of tenancy by the entirety, reasoning that agreement was comprehensive and final settlement taking effect as of date of order approving it). By agreeing to merge their negotiated agreement into the decree, Anthony and Jane made the terms of their agreement binding on them. Id. at 586-587. And that decree, which incorporated the terms of the agreement, is enforceable.

 Moreover, a civil judgment is generally enforceable against a decedent's estate if the decedent dies after entry of the judgment. See Sommer, 451 Mass. at 619. Here, Anthony died after the decree entered. The decree was not extinguished by his death and therefore remains enforceable. Compare Ross v. Ross, 385 Mass. 30, 35 (1982) (death of party prior to entry of judgment absolute abates divorce proceedings), with Yanolis v. Yanolis, 402 Mass. 470, 473 (1988) (if party to divorce dies after entry of judgment absolute but before resolution of appeal, judgment survives death). See Edinburg v. Edinburg, 22 Mass. App. Ct. 192, 197 (1986) (court-ordered payment by wife of attorney's fees in divorce enforceable after husband's death). [Note 10] Therefore, Jane's claim that Anthony's death rendered the decree unenforceable is not persuasive. 

 Page 106 

 4. Complaint for contempt. a. Standing. Cathleen filed a complaint for contempt seeking to enforce the decree on behalf of Anthony's estate. [Note 11] Jane contends that Cathleen did not have standing to file and prosecute the complaint for contempt because all right, title, and interest in the property vested in Jane upon Anthony's death. "[S]tanding to bring an action for partition of land is conditioned on the petitioner's owning a present undivided legal estate in the land." Battle, 489 Mass. at 485. But in Battle, no final decree had entered. Id. at 491. Instead, the decedent's heir sought to litigate the petition to partition by requiring the surviving joint tenant to comply with the interlocutory order. See id. at 483. See also id. at 491 ("partition[] become[s] final upon acceptance by the judge and the entry of final judgment in the case"). In contrast, Cathleen filed a complaint for contempt to enforce the partition decree. Because the procedural posture of this case stands on different footing from Battle, we conclude that Cathleen had standing; the motion to dismiss was properly denied. 

 b. Finding of contempt. Having concluded that Cathleen had standing, we turn to whether the judge abused her discretion in finding that Jane was in contempt. See Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018). Cathleen had the burden to prove, by clear and convincing evidence, that Jane willfully disobeyed a clear and unequivocal command. See Birchall, petitioner, 454 Mass. 837, 851 (2009). The record amply supports the judge's determination that Cathleen met her burden. The decree was clear: Jane was required to either refinance or sell the property in a certain time frame. Jane failed to do so. To the extent that Jane believed that she was the rightful owner of the property, she could have sought a declaration of same; she did not. See Barnes v. Devlin, 84 Mass. App. Ct. 159, 164-165 (2013). See also G. L. c. 231A, §§ 1 et seq. 

 5. Counterclaim for contempt. In her answer to the complaint for contempt, Jane filed what she styled as a counterclaim for contempt contending that Cathleen failed to make timely payments. At a preliminary hearing, the judge informed the parties that Jane could not "go forward on that cross counterclaim for contempt . . . because a counterclaim on a contempt is procedurally 

 Page 107 

ineffective" and instructed Jane to file her own complaint. Jane concedes she did not do so. Notwithstanding, the judge ruled on this counterclaim. She found Cathleen not in contempt and noted that while counterclaims for contempt are disfavored, she had considered the allegations set forth therein. This was error. Jane had no notice that her counterclaim was part of the evidence to be considered. See Cavanagh v. Cavanagh, 490 Mass. 398, 427 (2022) ("no 'good and sufficient reason' warranting a departure from the pretrial order" where "issue was [not] enumerated in the final pretrial order"). 

 Moreover, as the judge recognized, a counterclaim for contempt is disfavored. [Note 12] This is due in large part to the lack of due process procedural safeguards that are attendant in the filing of a complaint for contempt. For example, Mass. R. Dom. Rel. P. 4 provides, inter alia, that once a complaint is filed, the court must issue a summons with a return date. The summons must advise the defendant that failure to appear on the return date could result in a judgment being entered against him or her. The complaint and summons must be served by an authorized person and, once served, must be returned to the court with proof of service. Importantly, the court does not issue a summons upon the filing of a counterclaim for contempt. Because Jane was not afforded appropriate notice or an opportunity to be heard in connection with her counterclaim, we must vacate the portion of the judgment deciding Jane's purported counterclaim on the merits. [Note 13] See Idris I. v. Hazel H., 100 Mass. App. Ct. 784, 789 (2022).

 6. Conclusion. So much of the contempt judgment as dismissed Jane's counterclaim for contempt on the merits is vacated, and a new judgment shall enter on that counterclaim dismissing it without prejudice to refiling it as a complaint for contempt. [Note 14] In all other respects, the judgment is affirmed.

 So ordered.

FOOTNOTES
[Note 1] Of the estate of Anthony P. Cirone. 

[Note 2] Under the agreement, Anthony was obligated to make monthly payments to Jane in the amount of one-half of the mortgage and remove his personal belongings from the property by September 30, 2018. The agreement gave Jane two options with regard to the property: (1) by September 1, 2020, Jane could either refinance the property and remove Anthony from the note and mortgage or pay off the mortgage, and then pay Anthony a sum calculated using the terms of the agreement; or (2) if Jane was unable to do so, she was required to list the property for sale by June 1, 2020, with a realtor of her choosing, with the proceeds from the sale to be divided between the parties. The agreement provided that it "shall enter as the [j]udgment" on the petition. 

[Note 3] Jane and Anthony did not record the decree. In the future, parties should take the precaution of recording their agreement or partition decree in the registry of deeds. See G. L. c. 241, § 7. 

[Note 4] The purported counterclaim sought (1) a declaratory judgment that the agreement did not sever the joint tenancy and, if it did, it was invalid and unenforceable; and (2) a finding of contempt against Cathleen for failing to make timely mortgage payments. As discussed infra, the judge properly informed Jane that she could not file a counterclaim for contempt but, instead, she needed to file a separate complaint. 

[Note 5] The judge did not credit Jane's testimony that she did not understand the agreement or that she signed the agreement under duress. We defer to that finding on appeal. See Orange v. Shay, 68 Mass. App. Ct. 358, 362 (2007) (judge's credibility findings are close to immune from reversal on appeal in absence of most compelling of showings). 

[Note 6] Under all of the circumstances presented here, title to the property was burdened or encumbered by the decree. See City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 789 (2019) (lien burdens title to property). 

[Note 7] See Battle, 489 Mass. at 484-485; Knapp v. Windsor, 6 Cush. 156, 161 (1850); Atlantic Sav. Bank v. Metropolitan Bank & Trust Co., 9 Mass. App. Ct. 286, 290 n.9 (1980). 

[Note 8] We note that the introductory clause of the parties' agreement states that "[t]he parties . . . hereby agree to resolve the matters involving the home . . . as follows," and the agreement ends with the provision stating that "[t]he parties agree that this [a]greement shall enter as the [j]udgment in this case." 

[Note 9] General Laws c. 241, § 10, provides: 

"If it is found that the petitioner is entitled to have partition for the share claimed or for any less share, the court shall make the interlocutory decree that partition be made, and therein determine the persons to whom and the proportions in which the shares shall be set off. The petition shall not be defeated by the payment by a party of a mortgage, lien, tax or other encumbrance upon the land, if the other parties are entitled to redeem from such payment; but the interlocutory decree shall contain such terms and conditions relative to redemption by a contribution on account of any such payment as the court may deem equitable."

[Note 10] Other States have similarly held that a civil judgment survives a party's death. See, e.g., Sullivan v. Delta Air Lines, Inc., 15 Cal. 4th 288, 294, 305 (1997) (action merged into final judgment not abated by death of party even when underlying action would not survive death); Whittaker v. Smith, 998 S.W.2d 476, 478 (Ky. 1999) (unlike pending action, judgment survives death of judgment creditor); Tucker v. Miller, 113 N.C. App. 785, 788 (1994) (claim for equitable distribution survives death of spouse after entry of judgment but before equitable distribution); State v. Christensen, 866 P.2d 533, 535 (Utah 1993) (civil judgment, in contrast to criminal judgment, survives death of judgment creditor). 

[Note 11] Cathleen cannot bring a claim for breach of contract because the agreement merged into the decree and therefore did not retain independent legal significance. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (2019). 

[Note 12] We note that a complaint for civil contempt carries with it the possibility of incarceration. See generally Department of Revenue Child Support Enforcement v. Grullon, 485 Mass. 129 (2020). 

[Note 13] At oral argument, the parties agreed that the judgment on the counterclaim must be vacated. 

[Note 14] We express no opinion on the merits of the allegations set forth in Jane's purported counterclaim. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.